# Woods *v.* Klein, Appellant.

*Bankruptcy—Lien—Mortgage of boat—Preference within four months.*

1. A mortgage of a vessel duly recorded in the office of the collector of its home port is as valid a lien against the boat as a mortgage under the statute of this state is against the real estate mortgaged.

2. Where a mortgage of a boat gives to the mortgagee the right upon default to take possession of the boat and sell it, and such mortgage is duly recorded more than four months prior to the filing of a petition in bankruptcy against the mortgagor, the mortgagee has a right within the four months to take possession of the boat and sell it in accordance with the terms of the mortgage.

3. No provision of the bankrupt act contemplates that a valid lien, acquired more than four months before the filing of a petition in bankruptcy, shall be vacated by the bankruptcy proceedings, or that the enforcement of such a lien by execution shall constitute an illegal preference. There is a clear distinction between the bald creation of a lien within the four months and the enforcement of one previously acquired. The lien that is invalidated by the bankrupt act is one created by a levy, judgment, attachment, or otherwise within four months; where the lien is obtained more than four months prior to the institution of the bankruptcy proceedings, it is not only not to be deemed null and void on an adjudication of bankruptcy, but its validity is recognized.

4. Where a mortgagee of a boat purchases the boat at his own sale under a provision in the mortgage, any irregularities in the sale are waived by the mortgagor, if he confirms the sale and takes an option from the mortgagee to repurchase the boat.

*Replevin—Boat—Measure of damages.*

5. Where the defendant in replevin for a boat retains possession of the boat under bond, the jury in estimating the value of the boat may deduct from its market value at the date of the issue of the writ in replevin, the amount of the valid and subsisting liens against it on that date which had not been waived nor abandoned, and which had not been subsequently waived, abandoned or lost by the action of the claimant, nor by legal proceedings.

6. In such a case the record in the bankruptcy proceedings against the claimant showing a petition of the receiver in bankruptcy to sell the boat and the adjudication by the federal court of maritime and statutory liens against it, is not evidence against the plaintiff in replevin as to the amount that ought to be deducted for such liens from the value of the boat inasmuch as he was not a party to the proceedings in the federal court and was not heard there.

*Trial—Jury—Remark by member of jury.*

7. A complaint made by the foreman of a jury after a verdict to the effect that the jury room had been cold, and that if it had been properly heated there might or would have been a different verdict, is no ground for setting aside a verdict, in view of the fact that nothing was said by the foreman until after the verdict had been duly returned and recorded without any protest by any of the jurymen.

Argued Oct. 23, 1908. Appeal, No. 133, Oct. T., 1908, by R. M. MacKenzie, Trustee of the Estate of John F. Klein, Bankrupt, from judgment of C. P. No. 4, Allegheny Co., Fourth Term, 1907, No. 67, on verdict for plaintiff in case of Lawrence C. Woods v. John F. Klein. Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Replevin for a boat. Before CARNAHAN, J.

The facts are stated in the opinion of the Supreme Court.

Plaintiff presented the following point:

2. In estimating the value of the boat you must find from the evidence its market value on July 8, 1907, and from this market value you must deduct the amount of the valid and subsisting liens on said boat existing on July 8, 1907, and which have not been waived or abandoned at that time, and were not subsequently waived, abandoned or lost by the action of claimants or by legal proceedings.

Affirmed, but should be considered in connection with the first point. [3]

Defendant presented these points:

2. In order to make said bills of sale valid under the terms of the mortgage from John F. Klein to plaintiff, the said terms and conditions of said mortgage, upon default, must be literally complied with, by plaintiff taking possession of the said vessel and after taking such possession, advertising and selling and conveying the same to satisfy said mortgage debt. Therefore, if the jury believe from the evidence that plaintiff, as mortgagee, or his agent, W. D. Stockdale, had not possession of said vessel at the time of said alleged sale by Stockdale, then said sale was null and void, and consequently any bill of sale given by virtue of said sale is of no effect, and the verdict must be for the de-

fendant. *Answer:* Affirmed as to compliance with the terms and conditions of the mortgage. It was not necessary, however, that plaintiff take possession before the levy; after levy and until sale possession was in plaintiff by reason of the levy. [4]

3. If the jury believe from the evidence that no consideration passed for the bill of sale from John F. Klein to plaintiff, date June 4, 1907, the same is null and void. *Answer:* Refused. This bill of sale was given under seal, which seal imports consideration. [5]

4. If the jury believe from the evidence that the bill of sale of June 4, 1907, from John F. Klein to plaintiff, was given as an additional security for the debt already owing by Klein to plaintiff, then the same is a mortgage. *Answer:* Refused. It is not a mortgage unless the parties so intended. [6]

5. A ship or vessel is a mere piece of personal property—a chattel—and a sale accompanied by a delivery of possession will transfer title. Therefore, if the jury believe from the evidence that possession was never delivered to plaintiff or his agent, then both bills of sale are null and void and the verdict must be for the defendant. *Answer:* Refused. If the sale of May 15, 1907, was in accordance with the mortgage it was valid, and plaintiff was entitled to possession. [7]

6. That the alleged taking possession of the vessel, as testified to by W. D. Stockdale, was not a legal delivery of possession by John F. Klein, nor such as is contemplated by the terms of the mortgage, nor by the law. *Answer:* Refused. [8]

7. The plaintiff by accepting the additional security for his debt on April 26, 1907, i. e., the note of John F. Klein and W. D. Stockdale for $2,102, renewed the time of payment of said mortgage until May 14, 1907, and canceled all proceedings on the said mortgage prior to said date. Therefore, upon default on May 14, should have proceeded de novo according to the terms of said mortgage; and the evidence showing that he did not so do, the verdict must be for the defendant. *Answer:* Refused. [9]

8. If the jury believe from the evidence that the sale of May 15, 1907, was not properly conducted and fraudulent, then .

said sale is null and void, and the bills of sale given by virtue thereof are of no effect, and therefore the verdict must be for the defendant. *Answer:* Refused, because there is no evidence to justify such a belief and conclusion. [10]

8½. That the mortgage in this case not being recognized by the laws of the state of Pennsylvania, and, therefore, invalid as against claims of creditors of John F. Klein, was not a lien against said vessel, consequently all proceedings under said mortgage are null and void as against creditors, and the verdict must be for the defendant. *Answer:* Refused as a whole. [11]

9. That the laws of the state of Pennsylvania do not recognize chattel mortgages such as the one in this action. Therefore, the proceedings under and by virtue of the same having taken place, and the bills of sale of May 15, 1907, and June 4, 1907, having been executed and delivered within four months of the filing of an involuntary petition in bankruptcy against John F. Klein, defendant, in the district court of the United States for the western district of Pennsylvania, the said proceedings are null and void, and consequently said bills of sale of no effect, and the verdict must be for the defendant. *Answer:* Refused as a whole. [12]

10. If the plaintiff is entitled to recover at all in this action, the measures of damages would be the value of said vessel at date of the issuing of the writ in this case, July 8, 1907, less the amount of the maritime and statutory liens against the same at said date, and damages for detention not exceeding the legal rate of interest. *Answer:* Affirmed, with the qualification that the liens must be valid and subsisting liens as of that date and not waived, abandoned or lost subsequent to said date. [13]

11. That under all the evidence in this case the verdict must be for the defendant. *Answer:* Refused. [14]

The court charged in part as follows:

[Whatever verdict may be rendered here, and the verdict should and will be rendered for the plaintiff, there should be stated in it the value of the boat, because, if the plaintiff is entitled to a verdict, he is entitled to the value of the boat, not.

being able to get the boat itself, as of that date; and, in deter-
mining the question of value, of course, you will, after having
determined that, deduct certain liens to which I will call your
attention later.] [15]

[In the early part of 1907, the plaintiff, claiming there was
default in the payment of this indebtedness, authorized a con-
stable, Mr. Stockdale, to levy on the boat, in pursuance of this
mortgage, and to sell the boat, in accordance with the mort-
gage. The boat was levied upon by Mr. Stockdale, and, fol-
lowing the levy, advertisement was made, pursuant to the
terms and provisions of the mortgage; and, on May 15, 1907,
the boat was sold and Lawrence C. Woods was the purchaser
and became the owner.] [16]

[In pursuance of that request, the sale did not take place on
April 23, as it was advertised to take place, but was postponed
until May 14; and then, for some reason, on May 14, the sale
was again postponed until May 15, on which date the sale took
place.] [17]

[Therefore, it is not for Captain Klein to say that this sale of
May 15, 1907, was not a good sale. It is not for him to say
there was no default in the payment of this indebtedness, and
that, therefore, there could not be a sale. And, it is not for
him to say that there were irregularities about the sale, be-
cause he himself confirmed that sale, recognized it, and ac-
quiesced in it, as shown by the papers I have read to you. If
the sale was good, and I say to you it was good, L. C. Woods
became the owner of that boat on May 15, 1907; and, there
being no evidence in this case to indicate that he parted with
the ownership between May 15, 1907, and July 8, 1907, he was
the owner of the boat on July 8, 1907. Therefore, so far as the
question of ownership is concerned, there is but one verdict
that you can render and that is that he was the owner of the
boat at that time.] [18]

[But you must go a step further. There must be evidence
that the supplies were furnished on the credit of that particu-
lar steamboat, but that the parties looked to the steamboat
for payment. If they were furnished on the credit of Captain
Klein and not the steamboat, the steamboat would not neces-

sarily be chargeable with them, and the evidence would be insufficient to charge the steamboat with them. There are certain ways of determining that question, as to whether or not the supplies were furnished on the credit of the boat. If there was a distinct agreement between the parties that the supplies were to be furnished, and were to be furnished on the credit of the boat, that would settle the matter. If there was a common understanding between them, if it had been discussed before, or if the circumstances were such as to indicate a common understanding between the parties (but that must be mutual) that the supplies were to be furnished on the credit of the boat, that would be sufficient testimony to consider and act upon. But, there must be some testimony of that kind, in order to justify you in saying these supplies, or the supplies in any particular case, were furnished on the credit of the boat. If they were not furnished on the credit of the boat, they are not liens for you to consider here at all and to deduct from the value of the boat as you may find it to be as of July 8, 1907.] [19]

[There is the claim of James Rees & Sons, $608.16. Now, as I recollect it, the bookkeeper testified that these were charged to Klein in the books; but, as I say, that makes no difference, if the bookkeeper knows they were furnished to the "Island Queen," and, I understand him to say he does know they were furnished to the "Island Queen." I understand him to say they were furnished on the credit of the "Island Queen;" and, if he did say so, his knowledge was derived from the books, as I understand him. If that is so, and there is no other evidence in the case, that is, Captain Klein did not testify on that question in reference to that claim, the claim should not be allowed. Now, the stenographer has handed me here some notes of the testimony on the part of Mr. Blackmore, the bookkeeper, and the testimony on this point is this: "Q. Are we to understand that $608.16 was charged against the 'Island Queen' and on the credit of the 'Island Queen'? Is that right? A. Charged up against the 'Island Queen,' $608.16, and appears on our books. Q. Were these supplies and work done on the 'Island Queen' and delivered to the 'Island Queen'? A. Yes, sir. Q. How can you say that was charged to the

'Island Queen' when the caption of your account is Captain John Klein, and this is charged into that account?　A. The book of original entry, the daybook, is the steamer 'Island Queen.'　Q. And that only shows where the work was done? A. Shows who it was done for."　Now, if I am right about it, and I think I am, there is no testimony on the part of Mr. Blackmore that these supplies were furnished on the credit of that boat.　There is no testimony of Captain Klein that these supplies were furnished on the credit of the boat.　And, that being so, I will have to say to you that that claim should be excluded from your consideration.] [20]

Verdict and judgment for plaintiff for $2,196.40.　Defendant appealed.

*Errors assigned* amongst others were (3–20) above instructions, quoting them; and (29–35) refusal of the court to set aside the verdict on account of the alleged misconduct of the jurymen.

*L. C. Barton,* for appellant.—While it is true as a general principle that an agreement by a debtor to give his creditor an equitable lien upon personal property retained in the possession of the debtor is good as between themselves and will be enforced in equity, it is not good as to attaching or lien creditors, and very doubtful if it is good as to general creditors, after bankruptcy proceedings: First Nat. Bank v. Staake, 202 U. S. 141; Christ v. Zehner, 212 Pa. 188; Wylie's App., 92 Pa. 196; Mueller v. Nugent, 184 U. S. 1 (22 Sup. Ct. Repr. 269).

The jurisdiction of the bankrupt court is such that an attempt to enforce a lien in any other court is liable to be enjoined.　In re Utt, 105 Fed. Repr. 754; In re Matthews, 109 Fed. Repr. 603; In re Pittelkow, 92 Fed. Repr. 901.

A sale so made may be set aside: In re Davis, Fed. Cases, 3618; Davis v. Anderson, Fed. Cases, 3623; Cunningham v. Bank, 43 C. C. A. 377.

In the case of invalid mortgages there is no four months' limitations as in the case of preferences: Loveland on Bankruptcy, sec. 197; Eau Claire Nat. Bank v. Jackman, 204 U. S. 522; City of Tawas, 3 Fed. Repr. 170.

All the proceedings under said mortgage took place within four months of the filing of the petition in bankruptcy, during all of which time the evidence shows that Klein was insolvent, and that Woods knew or ought to have known of this fact. Wherefore said proceedings are a preference contrary to sec. 60a, as amended February 5, 1903: In re Wilkes, 112 Fed. Repr. 975; In re Haynes, 123 Fed. Repr. 1001; In re Haymes Buggy, etc., Co., 130 Fed. Repr. 977; Clarke v. Larremore, 188 U. S. 486 (23 Sup. Ct. Repr. 363); The Gordon Campbell, 131 Fed. Repr. 963.

Upon assignments of error twenty-ninth to thirty-fifth, relating to the action of court below in not setting aside the verdict, we respectfully submit that this matter is directly ruled by case of Kramer v. Kister, 187 Pa. 227.

*A. Leo Weil*, with him *Charles M. Thorp* and *S. Leo Rus-lander*, for appellee.—A mortgage on a vessel duly recorded under the acts of congress is a valid lien against subsequent purchasers, lienors and all persons, without regard to the state law on the subject of chattel mortgages: White's Bank v. Smith, 74 U. S. 646; The Vigilancia, 73 Fed. Repr. 452; The Gordon Campbell, 131 Fed. Repr. 963.

A chattel mortgage given two years before bankruptcy proceedings against the mortgagor were instituted, even if void as to creditors and purchasers, is good as between the parties, and if foreclosed and title obtained by the mortgagee before the bankruptcy proceedings are instituted, the trustee in bankruptcy of the mortgagor cannot attack the title: Bismarck B. & L. Assn. v. Bolster, 92 Pa. 123.

The foreclosure under the mortgage given prior to the four months' period of the bankruptcy act, is not within the provisions of said act: Owen v. Brown, 120 Fed. Repr. 812; In re Chapman, 99 Fed. Repr. 395; Rome Planing Mill Co., 96 Fed. Repr. 812; Thompson v. Fairbanks, 196 U. S. 516; Fisher v. Zollinger, 149 Fed. Repr. 54; Humphrey v. Tatman, 14 A. B. R. 74; Wilder v. Watts, 15 A. B. R. 57; In re Mayer, 19 A. B. R. 356.

The trustee in bankruptcy had no standing in this replevin

suit, which is a proceeding to try the question of title and taking; his remedy, if any, and his rights could not be determined or enforced in this proceeding.

The sale was in fact regular and proper and was acquiesced in, ratified and approved by the mortgagor long before any bankruptcy proceedings were instituted.

The appellant has no right to complain of the measure of damages laid down by the court.

OPINION BY MR. JUSTICE BROWN, January 4, 1909 :

On November 23, 1905, John F. Klein, the owner of a steamboat called "Island Queen," executed a mortgage on it to Lawrence C. Woods to secure the payment of $2,000. This mortgage was recorded in the office of the collector of the port at Pittsburg six days later, and, by its terms, upon the default of the mortgagor, the mortgagee was authorized to take possession of the vessel, and, after giving thirty days' notice by publication in a newspaper published in the city of Pittsburg, to sell it, returning any surplus to the mortgagor. A further provision was that the mortgagee might become a purchaser of it at such sale. Default having been made, Woods, the mortgagee, took possession of the boat through a bailiff in March, 1907, by whom it was advertised to be sold on April 23, 1907. No sale was held on that day, an adjournment having been asked for by Klein, and, after another adjournment, also at his request, the boat was sold to Woods on May 15, 1907. After the sale Klein took a written option from Woods to repurchase it for $1,869.08, the option to be void if payment was not made on or before July 1, 1907. In the interval Klein was allowed to use the boat, but, not having exercised his option, Woods demanded possession of it on or about July 6, 1907, which was refused. On July 8, 1907, this writ of replevin was issued, and, upon a bond given by Klein, he retained possession of the boat. On August 8, 1907, involuntary proceedings in bankruptcy were instituted against him, and, on the 29th of the same month he was adjudged a bankrupt. In November following, R. M. MacKenzie, his trustee in bankruptcy, was allowed to intervene as a defendant. A verdict was directed for the plaintiff, and damages were found by the jury under instructions from the court as to

their measure.   These instructions, as well as the direction of
a verdict, are assigned as error.

The validity of the mortgage on the boat, as between the
parties to it, is not questioned by any one of the thirty-six as-
signments of error.   The contention of the appellant is that
the sale under it was void as to his trustee in bankruptcy, be-
cause possession was taken of the mortgaged property within
four months of the institution of the bankruptcy proceedings.
The boat was a vessel within the provisions of the act of con-
gress of July 29, 1850, and, having been recorded in accord-
ance with that act, it was as valid a lien against the boat as a
mortgage under the statute of this state would have been upon
real estate of the mortgagor.   In White's Bank v. Smith, 7
Wall. 646, where it was held that the recording of a mortgage
on a ship in the office of the collector of the home port of the
vessel gives the mortgagee a preference over a subsequent pur-
chaser or mortgagee, irrespective of any formalities required
by the state statute to give effect to chattel mortgages, Mr.
Justice NELSON said : " Congress having created, as it were,
this species of property, and conferred upon it its chief value
under the power given in the constitution to regulate com-
merce, we perceive no reason for entertaining any serious
doubt but that this power may be extended to the security
and protection of the rights and title of all persons dealing
therein.   The judicial mind seems to have generally taken
this direction."

The appellee acquired no right or lien as a preference over
other creditors of the appellant within four months of the in-
stitution of the bankruptcy proceedings.   What he did within
that period was the exercise of a right and the enforcement of
a lien which had been acquired eighteen months before.   The
right was to take possession of the mortgaged boat and sell it
at any time upon the default of the mortgagor.   The prefer-
ence was obtained when the lien attached in 1905, and not
when it was enforced in 1907.   No provision of the bankrupt
act contemplates that a valid lien, acquired more than four
months before the filing of a petition in bankruptcy, shall be
vacated by the bankruptcy proceedings, or that the enforce-
ment of such a lien by execution shall constitute an illegal
preference : Owen et al. v. Brown, 120 Fed. Repr. 812.   There

is a clear distinction between the bald creation of a lien within the four months and the enforcement of one previously acquired: Thompson v. Fairbanks, 196 U. S. 516. The lien that is invalidated by the bankrupt act is one created by a levy, judgment, attachment or otherwise, within four months; where the lien is obtained more than four months prior to the institution of the bankruptcy proceedings, it is not only not to be deemed null and void on an adjudication of bankruptcy, but its validity is recognized. When the lien is obtained within four months, the property of the bankrupt is discharged therefrom, but not otherwise: Metcalf Bros. & Co. v. Barker, 187 U. S. 165. If the appellee had taken from the appellant a mortgage upon a house or farm belonging to him and within four months of the bankruptcy proceedings had issued a scire facias upon it and sold the property at sheriff's sale, such sale would have been perfectly good as against the trustee in bankruptcy; and so of the proceedings on this mortgage, recognized as a valid lien by the act of congress. An authority directly in support of the appellee's title to the boat, acquired by the sale on the mortgage, is Fisher v. Zollinger, 149 Fed. Repr. 54, in which it was held by the United States circuit court of appeals for the sixth circuit that where a chattel mortgage was given more than four months prior to the bankruptcy of the mortgagor, the taking possession by the mortgagee within such four months, with the consent of the mortgagor and as authorized by the terms of the mortgage, although with knowledge of the mortgagor's insolvency; did not constitute a transfer or preference under the bankruptcy act.

The intervention of the trustee in bankruptcy as a defendant in no manner affected the issue between Klein and Woods. The sole question after the intervention continued to be whether the title to the boat was in Woods at the time he brought his action of replevin, and the learned trial judge correctly decided as a matter of law that it was. The execution of the mortgage was admitted by the mortgagor; his default was clearly proved; the mortgagee, in accordance with the terms of the mortgage, took possession of the boat, sold it and became the purchaser of it, and, even if there had been any irregularities in the sale, they were waived by the mortgagor in

writing, when, on June 4, 1907, he confirmed the sale and took an option from the appellee to repurchase the boat. In the face of this there was no possible defense on the question of title.

The jury were instructed that in estimating the value of the boat they should find from the evidence its market value on July 8, 1907, and from this value deduct the amount of the valid and subsisting liens against it on that date which had not been waived or abandoned and which were not subsequently waived, abandoned or lost by the action of the claimants or by legal proceedings. This was clearly correct. The boat belonged to Woods, who was entitled to possession of it at the time the writ of replevin was issued. If at that time Klein had surrendered it to him, he would thereafter have been compelled to pay only such liens as had not been waived, abandoned or lost. If from the value of the boat there is now to be deducted the amount of liens against it that Klein was not compelled to pay, he will be profiting at the expense of the appellee. The right of the latter was to get the boat on July 8, 1907, burdened with such liens only as he might thereafter be compelled to pay.

The record in the bankruptcy proceedings, showing the petition of the receiver to sell the boat and the adjudication by the United States court of the maritime and statutory liens against it, was not evidence against the appellee as to the amount that ought to be deducted for such liens from the value of the boat, for he had not been a party to the proceedings in the United States court and was not heard there.

The disallowance of the claim of James Reese & Sons Company by the court below as a lien is assigned as error. No competent evidence was offered in support of it as a lien. Neither Klein nor Blackmore, the bookkeeper of the claimant, called in support of the claim, testified that the supplies had been furnished on the credit of the boat, and there was nothing shown that would have justified a finding by the jury that it was a valid lien.

Five assignments of error complain of the court's refusal to set aside the verdict on account of a remark made by the foreman of the jury after it had been received and recorded. It

seems that as the jury were about to separate after their verdict had been received the foreman complained to the court that their room had been cold and stated that if it had been properly heated, there would or might have been a different verdict. The exact words of · the foreman are uncertain, but the learned court, in disposing of the motion to set aside the verdict for the reason stated, properly said : " But the question as to whether he used the word ' would ' or the word ' might,' we do not regard as of any importance, in view of the fact that not one word on the subject of the jury room was spoken until after the verdict had been duly returned and recorded. There was ample opportunity to protest against the verdict, had any juror desired to do so. We do not understand that any of the jurors, at any time, protested against the verdict. On the contrary, it was returned as the act of all, and expressly assented to by all."

The assignments of error are all overruled and the judgment is affirmed.