# Bank of North America, Appellant *v*. Penn Motor Car Company.

*Sale—Contract—Change of possession—Rights of creditors—Bailment.*

1. When a vendee or a pledgee, takes title to personal property without taking possession of it, he takes the risk of the integrity and solvency of his vendor or pledgor when the rights of subsequent bona fide purchasers, or of levying creditors, arise.

*Bankruptcy—Federal Act—Bailment—Pledge of automobiles—Possession—Replevin—Act of Congress of June 25, 1910, 36 Stat. at L. 838, amending Section 47 of Bankrupt Act.*

2. Where a bank, which has loaned money to the owner of automobiles under an agreement to hold the title to the automobiles as a pledge in the nature of collateral security for the money loaned, permits the automobiles to remain for a time in possession of the borrower, but a few days before bankruptcy proceedings are instituted against the borrower, takes possession of the machines by a writ of replevin, it is not entitled to retain possession of the machines as against the trustee in bankruptcy of the borrower. Under the Act of Congress of June 25, 1910, 38 Stat. at L. 838, amending Sec. 47 of Bankrupt Act, the trustee has the right to take possession of the machines.

3. In such a case the trustee in bankruptcy has the same right during the period of four months immediately preceding the filing of the petition in bankruptcy, which an unsatisfied execution creditor would have had, if such creditor had issued an execution and levied upon the automobiles while they were in the possession of the pledgor.

Mr. Chief Justice Fell and Mr. Justice Brown dissent.

Argued Jan. 10, 1912. Appeal, No. 305, Jan. T., 1911, by plaintiff from order of C. P. No. 1, Phila. Co., Sept. T., 1910, No. 3410, dismissing exceptions to referee's report in case of Bank of North America v. Penn Motor Car Company. Before Fell, C. J., Brown, Mestrezat, Elkin and Stewart, JJ. Affirmed.

Exceptions to report of Richard S. Hunter, Esq., referee.

From the record it appeared that the action was one in replevin instituted against the Penn Motor Car Company, a few days before its bankruptcy to obtain possession of eighteen motor cars of the alleged aggregate value of $23,080. Of these eleven were taken by the sheriff upon the writ and delivered to the appellant. One was claimed by Oscar Isenberg et al., trading as Roman Automobile Company, who gave security and retained it. The others were returned as eloigned. The National Security Bank and the Tradesmen's Trust Company then intervened, each claiming title to some of the motor cars which had been delivered to the appellant. Subsequently, William S. Miller intervened first as receiver, and then as trustee in bankruptcy of the Penn Motor Car Company, claiming title to all the motor cars which had been replevied by the appellant.

By agreement the case was referred to Richard S. Hunter, Esq., as referee, who took testimony and filed his report, finding that as against all the intervenors except William S. Miller, as receiver and trustee in bankruptcy of the Penn Motor Car Company, the appellant was entitled to possession of the cars in question; but that the title of the trustee in bankruptcy was superior to that of the appellant. He also found the value of the cars delivered to the appellant to be $10,368.51. Upon exception he reduced this valuation to $9,978.51; but refused the appellant any further relief. The court below, upon the argument on the exceptions, affirmed the referee's report without opinion.

*Error assigned* was order dismissing the exceptions.

*John G. Johnson,* with him *James Wilson Bayard,* for appellant.—The title of a pledgee or vendee of personalty who takes possession thereof before any credi-

tor of the pledgor or vendor obtains a lien thereon by execution is not open to attack in Pennsylvania by such creditor under the subsequently issued execution: Hineman v. Matthews, 138 Pa. 204; Post v. Berwind-White Coal Mining Co., 176 Pa. 297; Davis v. Crompton, 158 Fed. Repr. 735; First Nat. Bank of Pittsburgh v. Guarantee Title & Trust Co., 178 Fed. Repr. 187; Powell v. Clawson, 38 Pa. Super. Ct. 245; Durr v. Replogle, 167 Pa. 347.

The trustee in bankruptcy of a pledgor or vendor of personalty which, before bankruptcy, has passed into the possession of the vendee thereof, has no title to such property superior to that of the pledgee or vendee: York Mfg. Co. v. Cassell, 201 U. S. 344 (26 Super. Ct. Repr. 481) ; First Nat. Bank v. Pennsylvania Trust Co., 124 Fed. Repr. 968.

*Henry N. Wessel,* with him *Francis C. Adler* and *Alfred Aarons,* for appellee.—A bill of sale of personal property alleged to have been made as collateral security for a loan, must be accompanied by delivery of possession to make it a valid pledge: Reinheimer v. Hemingway, 35 Pa. 432; Swope v. Crawford, 16 Pa. Superior Ct. 474; Clow v. Woods, 5 S. & R. 275; Martin v. Mathiot, 14 S. & R. 214; Duplex Printing Press Co. v. Clipper Pub. Co., 213 Pa. 207; In re Beihl, 176 Fed. Repr. 583; White v. Gunn, 205 Pa. 229; American Can Co. v. Preserving Co., 183 Fed. Repr. 96; American Exchange Nat. Bank v. Nat. Bank, 226 Pa. 483; Sholes v. Asphalt Block & Tile Company, 183 Pa. 528.

Where a creditor does not take possession of personal property, alleged to have been pledged as collateral security for loans such creditor will not be permitted to secure and assert a lien as well as a preference over other creditors by obtaining possession of such property by legal proceedings within a week of the filing of a petition in bankruptcy and without a new consideration after admitted knowledge of facts

showing insolvency: In re Sheridan, 3 Am. Bankcy. R. 554; In re McLam, 3 Am. Bankcy. R. 245; In re Mandel, 10 Am. Bankcy. R. 774; In re Hickerson, 20 Am. Bankcy. R. 682; Torrance v. Winfield Nat. Bank, 11 Am. Bankcy. R. 185; In re Foley, 14 Am. Bankcy. R. 829; Allen v. McMannes, 19 Am. Bankcy. R. 276; Roberts v. Johnson, 18 Am. Bankcy. R. 132; Security Warehousing Co. v. Hand, 206 U. S. 415 (27 Super. Ct. Repr. 720); Knapp v. Milwaukee Trust Co., 216 U. S. 545 (30 Super. Ct. Repr. 412); Girard Trust Co. v. Mellor, 156 Pa. 579; Fourth Street Nat. Bank v. Millbourne Mills Co., 172 Fed. Repr. 177; Security Warehousing Co. v. Hand, 19 Am. Bankcy. R. 291; First Nat. Bank v. Title & Trust Co., 178 Fed. Repr. 187; Frost v. Latham, 181 Fed. Repr. 866; In re Hartman, 26 Am. Bankcy. R. 76; Guarantee Title & Trust Co. v. Bank, 26 Am. Bankcy. Rep. 85; In re Hymes Buggy & Implement Co., 130 Fed Repr. 977; In re Forbes, 26 Am. Bankcy. R. 355; Skilton v. Codington, 15 Am. Bankcy. R. 810; Dunn Salmon Co. v. Pillmore, 19 Am. Bankcy. R. 172.

OPINION BY MR. JUSTICE ELKIN, February 26, 1912:

This case was tried without a jury under the act of May 14, 1874, P. L. 166. The referee has found all the material facts and has clearly and comprehensively stated them in his report. The questions involved have received most intelligent consideration and the reasons given for the conclusion reached are indicative of a thorough understanding of the legal principles upon which the rights of the parties depend. The contract entered into between the appellant bank and the motor car company was a perfectly proper one, binding upon the parties according to its terms. Under the contract appellant held title to the automobiles as a pledge in the nature of collateral security for the loans negotiated by the motor car company with the bank. The situation of the parties, the scope and character of

their business relations, and the nature of their trans-
actions, clearly indicate that it was the intention of
the parties to pledge the motor cars as a security for
moneys advanced by the bank to pay for cars purchased
by the motor car company from the manufacturers. In
this respect the case is clearly within the rule of West-
ern National Bank v. York Silk Manufacturing Com-
pany, 225 Pa. 442. The bank held title to the automo-
biles under the agreement and as against the motor car
company had the right to take possession of them with
or without the aid of a writ of replevin. As to credi-
tors, the situation is different, and contracts, valid as
between parties, are frequently declared invalid as to
creditors. This position is not questioned by either
party and both sides agree as to the general principles
of law applicable to cases of this character. While in
later years the courts have recognized exceptions to the
rule as laid down in Clow v. Woods, 5 S. & R. 277, the
exceptions having become as well established as the
rule itself, that case has stood as an authority in Penn-
sylvania from that time to the present. The rule there
announced is that a sale of personal property, leaving
the vendor in possession and without doing anything
to indicate a change of ownership, is fraudulent as
against creditors. The decision was put upon the
ground that it would be dangerous to the public to
countenance such transactions. It may be conceded,
indeed it must be, that the rigor of this rule in later
years has been somewhat relaxed, but the rule itself
still remains the law of our state. When a vendee, or
a pledgee, takes title to personal property, without
taking possession of it, he takes the risk of the integ-
rity and solvency of his vendor, or pledgor, when the
rights of subsequent bona fide purchasers, or of levying
creditors, arise: White v. Gunn, 205 Pa. 229. Appel-
lant does not deny the rule, but insists that it should
not be applied to the facts of the present case. It is
contended that the rule does not apply because a few

days before the motor car company was adjudged a
bankrupt, appellant took possession of the cars in dis-
pute, which under its contract it had the right to do,
even without seizure by writ of replevin, and that hav-
ing possession when the bankrupt proceedings were in-
stituted, no matter by what process obtained, the case
at bar is distinguished from Clow v. Woods and all the
cases that have followed it.   Such a distinction can be
made, and the argument in support of it has merit, but
we are not prepared to say, and for the purposes of the
case at bar it is not necessary to finally say, that such
a distinction should be made.   Primarily, this is a con-
troversy between the trustee in bankruptcy, represent-
ing the creditors of the bankrupt estate, and the bank
claiming title to the automobiles as pledgee.   The rights
of creditors, the question of preferential liens, and the
rules of procedure, under the bankruptcy laws, must
necessarily prevail.   The bankruptcy act of 1898 pro-
vides, inter alia, "That all levies, judgments, attach-
ments or other liens obtained through legal proceed-
ings against a person who is insolvent, at any time
within four months prior to the filing of a petition in
bankruptcy against him, shall be deemed null and void
in case he is adjudged a bankrupt....."   The act con-
tains many other provisions relating to liens created
and transfers of property made for the purpose of giv-
ing a preference after insolvency has become known
and within the four months' period.   For the purposes
of the present case we do not deem it necessary to dis-
cuss or determine whether what was done by the parties
constitutes a preferential transfer of property within
the meaning of the act.   This is primarily a ques-
tion for the federal courts, and, as we do not deem
it vital in the determination of the rights of the parties
here involved, it may be passed without further dis-
cussion.   It may also be conceded that in the present
case there was no levy, or judgment, or attachment, or
other lien obtained through legal proceedings against

the bankrupt within four months prior to the filing of the petition in bankruptcy. It is doubtful to say the least whether taking possession of the motor cars by means of a writ of replevin constitutes the obtaining of a lien upon which the act has placed the seal of its disapproval. But the courts have uniformly taken the view that these provisions of the act were intended to prevent preferences and to secure equality in the distribution of bankrupt estates. This has been the underlying thought of all the courts called upon to interpret the bankruptcy act of 1898, and we think it has an important bearing upon the effect to be given the amendment of 1910. This amendment added to section 47 of the original act the following clause: "And such trustees as to all property in the custody, or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also as to all property not in the custody of the bankruptcy court shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied." The manifest purpose of the amendment was to enlarge the rights, remedies and powers of a trustee in bankruptcy, and it had the effect of vesting in the trustee the rights, remedies and powers of a judgment or other creditor having a lien, and of an unsatisfied execution creditor without a lien at the time of instituting bankruptcy proceedings. In other words, the trustee was given the power to assert every right which such creditors could have asserted during the period of four months immediately preceding the filing of the petition in bankruptcy. If a judgment creditor had issued an execution and levied upon the automobiles while they were in the possession of the motor car company, his rights would have been superior to those of the pledgee, and they could have been sold as the property of the pledgor in satisfaction of the debt of the

levying creditor. As to the motor cars in dispute here the rights of the parties must be determined as they existed during the entire four months period. If appellant had obtained a judgment on the notes held by it and had issued execution thereon within that period, all proceedings thereunder would have been deemed null and void when the insolvent company was adjudged a bankrupt. It is difficult to see how upon any equitable or legal grounds it should occupy a more advantageous position because it caused a writ of replevin to be issued a few days before the petition in bankruptcy was filed, and, after it must have known of the insolvency of its debtor. When the insolvency became known each creditor did what he could to protect his own interests, and no blame can attach to any one for so doing, but as we view it, appellant did not act soon enough to take the property of the bankrupt out of the grasp of general creditors. The purpose of the original bankruptcy act, as well as the amendment of 1910, was to enforce equality of distribution among all the creditors, to strike down secret liens, and to avoid preferential transfers of property, and as we read the decisions of the Federal Courts the conclusion is irresistible that they so understand and construe the law. This general purpose of the acts would be defeated if the contention of appellant should be sustained in the present case. While the rights of appellant could be asserted under its original contract against the motor car company, they cannot prevail against the general creditors of the bankrupt under the circumstances of this case.

Judgment affirmed.

MR. CHIEF JUSTICE FELL and MR. JUSTICE BROWN, dissent.