# In re WEST YORK MOTOR CO., Inc.

(District Court, M. D. Pennsylvania. February 7, 1927.)

No. 5021.

**Bankruptcy** ⟷140(½)—**Leases of motor cars to bankrupt by claimant, which had neither title nor possession, held invalid, and to afford no ground for reclamation.**

Bankrupt, a motor company, received invoice of a shipment of automobiles with notice that indorsed bills of lading, with draft attached, were at a bank. Bankrupt's president went to claimant, which gave him checks payable to the bank for the amount of the draft and also executed leases of the cars to bankrupt. The checks were used by bankrupt's treasurer to take up the bills of lading and bankrupt received the cars from the carrier, and

they later came into possession of its trustee. *Held* that, as claimant never had either title to or possession of the cars, its leases were invalid, and gave it no right to reclaim the cars from the trustee.

In Bankruptcy. In the matter of the West York Motor Company, Inc., bankrupt. On review of order of referee denying petition for reclamation of the Baltimore Finance & Guaranty Company. Affirmed.

James G. Glessner, of York, Pa., and J. H. Jacobs, of Reading, Pa., for claimant.

Allen C. Wiest and John A. Hoober, both of York, Pa., for trustee in bankruptcy.

JOHNSON, District Judge. The court is asked to review the findings of fact, opinion, and decree of the referee in this case, in which he denied the prayer of the Baltimore Finance & Guaranty Company for an order to turn over 16 automobiles, and found that the Baltimore Finance & Guaranty Company is liable under its bond, given on taking possession of the automobiles in question, in the sum of $12,400. The facts are correctly stated in the opinion of the referee, and in substance are adopted in this opinion, as follows:

On November 13, 1925, the Baltimore Finance & Guaranty Company of Baltimore, Md., petitioned the trustee to turn over to it 16 motor cars that were in the possession of the bankrupt at the time of its adjudication, alleging the title to the automobiles to be in the petitioner by virtue of leases under the terms of which the automobiles were leased to the bankrupt, prior to its adjudication, by the said Finance & Guaranty Company. The leases provided, among other things, that at the expiration of the term provided in the leases the lessee should have the option to purchase the automobiles for a specified sum. On November 18, 1925, the trustee in bankruptcy filed his answer to the petition for reclamation, praying that the petition be denied.

On the same date the Baltimore Finance & Guaranty Company and the trustee in bankruptcy filed their joint petition, setting forth, among other things, that, unless said automobiles were disposed of, they would depreciate in value, and praying that title and possession of the cars be turned over to the Baltimore Finance & Guaranty Company, agreeing that the value of the cars be fixed at $12,400, and that the bond of said company be substituted for said automobiles, awaiting the final determination of the litigation. The court, thereupon, granted the prayer of the petition, fixing the value of the automo- biles at $12,400 and requiring the said Finance & Guaranty Company to file a bond in this court in that amount.

The referee correctly finds, from the evidence taken, the following facts:

"Prior to the adjudication in bankruptcy the Chrysler Sales Corporation, or Chrysler Motor Car Company, which names are used interchangeably, shipped by rail the 16 automobiles in issue to York, Pa., consigned to the 'order of Chrysler Sales Corporation, notify West York Motor Company'; the bills of lading being indorsed by the Chrysler Sales Corporation, making the same negotiable. These bills of lading were mailed to the Industrial National Bank at York, Pa., with sight drafts attached for the purchase price of the automobiles mentioned in said bills of lading. The invoices covering said automobiles were sent to the West York Motor Company. The president of the West York Motor Company, now bankrupt, John A. Slothour, took these invoices to the office of the Finance & Guaranty Company at Baltimore, Md., the petitioner herein, and applied for a loan for the Motor Company, in order to finance the purchase of said automobiles. The Finance Company executed and delivered to the president of the Motor Company written leases covering said automobiles in question, and the president of the Motor Company turned over to the Finance Company said Motor Company's checks payable to the Finance Company for 20 per cent. of the purchase price of said cars. The Finance Company then delivered to Slothour checks of the Finance Company payable to the Industrial National Bank at York, Pa., for the amounts of the respective sight drafts attached to the bills of lading held by the Industrial National Bank.

"Instead of taking these checks to the bank direct, Slothour, the president of the Motor Company, took them to the office of the Motor Company at West York, Pa., and delivered them to the treasurer of the Motor Company, who in turn took them to the Industrial National Bank, paid the sight drafts, and lifted the bills of lading, and later the treasurer of said Motor Company presented them to the Railroad Company, the carrier of the automobiles, paid the freight and received from the Railroad Company the automobiles in question.

"The treasurer of the Motor Company then unloaded the said automobiles from the cars of the Railroad Company and took them to the premises of the West York Motor Company, now the bankrupt. The automobiles now being claimed by the Finance Com-

pany remained on the premises of the Motor Company until seizure by the sheriff on an execution process, and until the trustee in bankruptcy took charge of them after the adjudication, the sheriff having relinquished to the trustee possession of the same. It does not appear that any officer or representative of the Finance Company was present when the drafts were paid or when the cars were lifted or delivered to the Motor Company.

"The only disputed testimony is whether or not Slothour, the president of the Motor Company, was designated as an agent of the Finance Company by the said Finance Company to take the checks to the bank for the payment of the sight drafts. If it be assumed that the Finance Company did actually attempt to constitute John A. Slothour as an individual as its agent to deliver the checks of the Finance Company to the bank and lift the bills of lading, he did not complete the transaction for which he was appointed agent, inasmuch as he delivered the checks of the Finance Company to the treasurer of the Motor Company, who then carried through the transaction. There is absolutely no evidence that the treasurer of the West York Motor Company was acting for any one except his own company. If the Finance Company attempted to constitute John A. Slothour, as president of the Motor Company, its agent, there is certainly no evidence that he was acting within the scope of his authority, or had any special authorization to accept such an agency and act for the Finance Company rather than his own company."

The question in this case is whether the Finance & Guaranty Company had such title and possession to the cars as would authorize the company to lease the same to the West York Motor Company. From all the evidence in the case it is clear that at the time of the making of the leases the Finance & Guaranty Company had no such title and possession to the cars as would permit it, under the law, to execute the leases in question, which would bind the present trustee in bankruptcy. At the time of the execution of the leases the Finance & Guaranty Company had neither title nor possession of the cars. The draft, in fact, was not paid by the Finance & Guaranty Company, but it was paid by the West York Motor Company, and the bill of lading was not transferred to the Finance & Guaranty Company, but to the West York Motor Company, so that the title and possession of the cars, when taken from the Railroad Compa-

ny, lodged in the West York Motor Company, and not in the Finance & Guaranty Company, and without title and possession the Finance & Guaranty Company could not make a valid lease which will now bind this trustee in bankruptcy, who exercises the same right here as an execution creditor.

In Root v. Republic Acceptance Corporation, 279 Pa. 55, 123 A. 650, it was held:

"Where persons, trafficking in and loaning money on automobiles, execute a number of papers giving a similitude of the passing of title, the courts will look through the screen of paper titles to ascertain what was the real situation. Where an owner of an automobile executes a bill of sale, and a storage receipt to another, and the latter executes a bailment lease back to the owner, and there is no change of possession, and it appears that the real transaction was nothing more than a loan of money on the automobile, the relation between the parties is that of debtor and creditor and not of bailor and bailee. Where a vendee or pledgee takes title to personal property, without taking possession of it, he takes the risk of the integrity and solvency of his vendor or pledgor, and he has no title therein as against the rights of subsequent bona fide purchasers or levying creditors."

In Truck, Tractor & Forwarding Co. v. Baker, 281 Pa. 145, 126 A. 239, it was held: "The law abhors secret liens, however attempted to be established, * * * and will allow no device to elude the principle which forbids a lien to be created on chattels as a security separate from the possession, * * * and the same is true as to acquiring a secret title."

In Bank of North America v. Penn Motor Car Co., 235 Pa. 194, 83 A. 622, it was held: "When a vendee, or a pledgee, takes title to personal property, without taking possession of it, he takes the risk of the integrity and solvency of his vendor or pledgor, when the rights of subsequent bona fide purchasers or of levying creditors arise."

For the reasons above stated, the findings and order of the referee are sustained, and the petition of the Baltimore Finance & Guaranty Company for an order directing the trustee to turn over said automobiles in question is denied; and the court finds that the Finance & Guaranty Company of Baltimore, Md., is indebted to the said bankrupt estate on the said bond in the sum of $12,400, the value of the said automobiles as agreed upon.