Gernerd, Trustee in Bankruptcy, *v.* Union Indemnity Co., Appellant.

Argued January 31, 1933.   Before KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*H. B. Friedman*, of *Aubrey, Friedman & Senger*, for appellant.—Under the terms of the agreement, pledgee having taken possession of the property prior to pledgor's bankruptcy, its title was complete: Woods v. Klein, 223 Pa. 256; Christ v. Zehner, 212 Pa. 188; Davis v. Billings, 254 Pa. 574; Frederick v. Mortgage Corp., 1 Fed. (2d) 438; Zehner v. Surety Co., 272 Fed. 954; Munn v. Lorch, 305 Pa. 55.

*Harvey H. Steckel*, with him *Groman & Rapoport*, for appellee, cited: Bank of North America v. Motor Car Co., 235 Pa. 194; Root v. Acceptance Corp., 279 Pa. 55; Sterling v. Smith, 291 Pa. 236.

OPINION BY MR. JUSTICE MAXEY, March 20, 1933:

This is an appeal from the denial by the court below of defendant's motions for judgment n. o. v. and for a new trial. An action of assumpsit was brought by Fred B. Gernerd, Trustee in Bankruptcy of Charles H. Hoch and Oscar S. Hoch, individually, and as copartners, trading as Hoch Contracting Company (hereinafter referred to as the partnership), against the Union Indemnity Company, a corporation, (hereinafter referred to as the Indemnity Company), to recover the value of certain road building equipment originally owned by the partnership which the company had taken into its possession. After trial plaintiff recovered a verdict for $13,255.

On May 19, 1930, the partnership, which had secured a contract to construct a state highway in Pike County, applied to the Indemnity Company for a bond required of them by statute. On July 10, 1930, the company executed this bond. The application, which when accepted constituted a contract between the partnership and the company, contained, inter alia, the following: "That for the better protection and security of the Company, the undersigned, as of the date hereof, hereby assigns, transfers and conveys to the Company, all the rights, titles

and interests of the undersigned in and to all the supplies, tools, plant, equipment and materials of every nature and description that he or it may now or hereafter have upon said work, or in or on about the site thereof,......and the undersigned does hereby authorize and empower the company, its authorized agents or attorneys, to enter upon and take possession of said supplies, tools, plant, equipment, materials, and enforce, use and enjoy the title thereto and the possession thereof *in the event of any default on the part of the undersigned in the performance of the contract hereinabove referred to* [italics supplied] or in the payment of any of the premiums above mentioned."

On June 6, 1931, the partnership defaulted in the performance of its contract with the Commonwealth and the work was subsequently completed by the Indemnity Company. At the time the contract was executed, the partnership owned practically all of the equipment, machinery, and building materials set forth in the statement of claim. The company, upon the execution of the bond by it and of the assignment of the equipment to it, did not take possession of the equipment but allowed it to remain in the possession of the partnership. The insolvency of the partnership became manifest as early as March 23, 1931, when a meeting was held in the directors' room of an Allentown bank, attended by representatives of certain banks and of the Indemnity Company, and by Charles Hoch representing the partnership. A statement was there made that "Hoch is insolvent."

*June 6, 1931,* the partnership defaulted in its road building contract. *June 19, 1931,* the Indemnity Company took an exemplification of a judgment obtained by it against the partnership on March 6, 1931, in Berks County for $269,511.51 and filed it of record in Pike County. *June 20, 1931,* the Indemnity Company took the equipment in controversy into its possession and removed some of it to New York State. *July 3, 1931,* the Indemnity Company caused an execution to issue and

be placed in the hands of the sheriff of Pike County (where a large part of the equipment was) on that judgment against "the goods and chattels, lands and tenements" of the partnership. *July 11, 1931,* an involuntary petition in bankruptcy was filed against the partnership. On the same day the United States Court for the Middle District of Pennsylvania issued an order restraining the Indemnity Company "from further proceedings against the assets of the alleged bankrupts upon an execution issued out of the Court of Common Pleas of Berks County and an exemplified copy of which was entered of record in the County of Pike." *August 3, 1931,* the partnership was adjudged bankrupt. *August 24, 1931,* F. B. Gernerd was elected trustee of the bankrupt. He demanded that the property in controversy be turned over to him. This demand was refused.

The controlling question in this case is: Did title to the property in dispute vest, as against all others, in the Indemnity Company four months before the petition in bankruptcy was filed?

The contract between the partnership and the company contained the provision that the latter should have the right to "enforce, use and enjoy the title thereto and the possession thereof in the event of any default" by the partnership "in the performance of the contract." In other words the Indemnity Company could not "enforce," i. e., make effective its title to and possession of the equipment "assigned" to it for its "better protection and security" until the partnership defaulted in the performance of its road building contract.

The law is well settled in Pennsylvania that "a sale of personal property, leaving the vendor in possession and without doing anything to indicate a change of ownership is fraudulent as against creditors. ...... It would be dangerous to the public to countenance such transactions. It may be conceded, indeed it must be, that the rigor of this rule in later years has been somewhat relaxed, but the rule itself still remains the law of

our State. When a vendee, or a pledgee, takes title to personal property, without taking possession of it, he takes the risk of the integrity and solvency of his vendor, or pledgor, when the rights of subsequent bona fide purchasers, or of levying creditors, arise: White v. Gunn, 205 Pa. 229 [54 A. 901]": Bank of N. A. v. Penn M. C. Co., 235 Pa. 194, 198, 83 A. 622.

Appellant cites the case of Woods v. Klein, 223 Pa. 256, 72 A. 523. That case is not in point for there the lien on the property, which was a steamboat, was evidenced to the world by a mortgage recorded in the office of the collector of the port more than 18 months before the institution of bankruptcy proceedings against the owner of the boat. Under the Act of Congress of July 29, 1850, the mortgage was a valid lien against the boat from the time it was recorded. Appellant also cites the case of Christ v. Zehner, 212 Pa. 188, 61 A. 808. In that case a bill of sale absolute in its terms was given as security for a loan. The goods were to be reassigned upon the repayment of the loan. In the case now before us the Indemnity Company could "enforce, use and enjoy the title" to the equipment "assigned" to it and "possession thereof" only "in the event of any default" by the assignor, i. e., by the Indemnity Company.

What this court said in Bank of North America v. Penn Motor Car Co., supra, applies here if we substitute the phrase "the indemnity company claiming title to the equipment," for the corresponding phrase in the excerpt quoted, as follows: "Primarily, this is a controversy between the trustee in bankruptcy, representing the creditors of the bankrupt estate, and the bank claiming title to the automobiles as pledgee. The rights of creditors, the question of preferential liens, and the rules of procedure, under the bankruptcy laws, must necessarily prevail."

The Bankruptcy Act of 1898 as amended in 1926, section 60, provides: "Section 60. Preferred Creditors.— (a) A person shall be deemed to have given a preference

if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of recording or registering of the transfer, if by law such recording or registering is required or permitted."

Sub-paragraph "b" of that act provides that if such a transfer of property within four months before the filing of the petition in bankruptcy operates as a preference "it shall be voidable by the trustee and he may recover the property or its value from such person," i. e., the person to whom the transfer was made, if he then had reasonable cause to believe that a preference would result.

Whatever claim the Indemnity Company had to the property constituting the subject of this suit must yield to the superior claim of the trustee. The latter was entitled to recover the property or its value.

Assignments of error Numbers 1, 5 and 6 are overruled.

The question of election of remedies was not raised in the pleadings (though referred to by the court below), and to determine this controversy it is not necessary to invoke the principle that of two or more inconsistent remedies the pursuit of one necessarily involves the negation of the other. In view of the bankruptcy proceedings and the consequent futility of the Indemnity Company's belated attempt to "enforce and enjoy" its title to and possession of the equipment, the doctrine of election of remedies has no application here even if it had been

pleaded. Plaintiff was therefore under no necessity of pleading it.

The remaining assignments of error are overruled.

The judgment is affirmed.