Maryland Casualty Company, Appellant, *v.*
National Bank of Germantown & Trust
Company.

Argued December 2, 1935.    Before FRAZER, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for appellant.

*Edward H. Cushman,* with him *Everett H. Brown, Jr.,* of *Shields, Clark, Brown & McCown,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 6, 1936:

In July, 1931, the City of Philadelphia awarded a contract to one Frunzi for the construction of a sewer, at a price not to exceed $45,000, Frunzi agreeing to

accept city warrants up to $42,500 in payment as cash. To finance the work, Frunzi borrowed money from the National Bank of Germantown and Trust Company, hereinafter referred to as the bank, depositing as collateral the city warrants with which he was paid, and the bank collected the warrants as they were honored by the city. Frunzi got into financial difficulties and failed to pay all his materialmen, who had recourse to the bond which he had filed for their protection with the Maryland Casualty Company as surety. Shortly after claim was made upon it, but after the final warrant in payment for the job had been turned over to the bank, the surety notified the bank that it claimed such warrants as remained unhonored, by virtue of an assignment thereof by Frunzi in his application for the bond. The bank claimed a prior right to the warrants as having been pledged with it by Frunzi as security for his borrowings, and refused to surrender them to the surety. The latter then filed this bill in equity asking that the bank be ordered to turn over to it the warrants, or their proceeds, in its hands when notice was given of its claim. After a hearing, the chancellor dismissed the bill. The surety appeals.

The chancellor's findings of fact, which are supported by the evidence, and by which therefore we are bound, discloses the following situation: Frunzi's contract with the city contained no provision requiring him to pay for labor and materials, nor did it contain any provision for the withholding of payments by city officials until satisfactory evidence was presented of the payment of labor and material bills. However, the contract did require him to give bonds for the completion of the work and for the payment of materialmen, this latter bond being also required by a city ordinance. In obtaining these bonds Frunzi filed with appellant an application which contained a provision assigning to the surety all payments due him under his contract with the city, should he default and fail to fulfill any

of the obligations of the contract and bond.* This application, of which most of the blank spaces provided for answers to questions are not filled in, does not specify whether it is for the performance bond or the materialman's bond. Moreover, no copy of the application was filed with the contract and bonds in the Mayor's office. However, from the day after the bond was issued in July, 1931, the bank had actual knowledge that appellant had bonded Frunzi on his contract with the city, but it had no knowledge of the terms of the application and the conditional assignment therein until the instant suit was begun in October, 1932.

Frunzi entered upon the work at the beginning of August, 1931, and, as he was paid by the city, turned the warrants over to the bank, which, as it collected them, credited the sums to his account. Two of the warrants, one for $6,763.50 and another for $8,019 were exchanged by the bank for city bonds, of a face value of $14,500, which bonds were held as collateral security against a note executed by Frunzi for $10,400, and which matured on June 2, 1932. Exclusive of this obligation Frunzi was also indebted to the bank as endorser of a note given by one Ventresca on May 16, 1932, payable June 10, 1932, for $14,500, this note representing a renewal of prior unpaid loans to Frunzi.

---

* The provision reads as follows: "In the event of claim or default under the bond herein applied for, or in the event the undersigned shall fail to fulfill any of the obligations assumed under the said contract and bond, or in the event of claim or default in connection with any other former or subsequent bonds executed for us or at our instance and request all payments due or to become due under the contract covered by the bond herein applied for, shall be paid to the Company—and this covenant shall operate as an assignment thereof and the residue, if any, after reimbursing the Company as aforesaid, shall be paid to the undersigned after all liability of the Company has ceased to exist under the said bonds, and the Company shall at its option be subrogated to all rights, properties and interest of the undersigned in said contract or contracts."

On the same day the city accepted the sewer as completed, and delivered to Frunzi the final warrant, in the sum of $5,724.49, completing the payments for the work. This warrant Frunzi turned over a week later to the bank, which held it as security against the Ventresca note. Ever since the early part of 1932 the bank knew that Frunzi was in financial difficulty.

Meanwhile, unpaid materialmen had made demand on the surety; the first claim was made May 17, 1932, by a materialman to whom payment had been due the preceding August, i. e., shortly after the work had been started. In settlement of this and other claims arising out of Frunzi's default, appellant, as surety, has paid over $12,000. On June 16, 1932, appellant notified the bank that under the assignment in the application for the bonds, it claimed the last warrant, of May 16, 1932, which was still in the bank's hands; on July 15, 1932, appellant made similar demand for the city bonds. However, on July 11, the bank had sold the city bonds of the face value of $14,500 for the net sum of $12,490.55, with which it discharged the note for which the bonds were pledged, and applied the balance of $2,017.75 to the reduction of the Ventresca note. On October 18, 1932, the city honored its warrant of May 16, and paid the amount thereof to the bank, which applied it against the Ventresca note, leaving a final indebtedness by Frunzi to the bank of over $6,000, represented by the matured Ventresca note.

Appellant bases its claim upon the conditional assignment contained in Frunzi's application for a bond, and contends that the bank had constructive notice thereof, with the result that it received all warrants subsequent to Frunzi's default—which it is argued occurred as soon as Frunzi failed to pay materialmen when their claims were due—subject to an equitable lien in favor of appellant. While the application upon which appellant's contention is founded is indefinite as to whether it refers to the bond here involved, it is ad-

mitted in the pleadings that its execution was a condition precedent to the issuance of the bond. Even so, we are unable to discover any facts which would, prior to the formal notification in June, 1932, give the bank notice, actual or constructive, of the conditional assignment contained in the application. The only documents on record were the contract between Frunzi and the city, and the bonds required by the contract; the application containing the assignment was not attached to any of these papers and was not made a matter of public record. So far from the recorded documents giving notice of such an assignment, the contract with the city contained an express provision that "no payment or part payment, which may accrue hereunder, shall be assigned." That the bank knew appellant had bonded Frunzi was certainly no notice to it of the terms upon which it had done so, nor was the bank under any duty to inquire: Cf. Newman v. Globe Indemnity Co., 275 Pa. 374, 119 A. 488.

Appellant relies strongly upon Lancaster County National Bank's Appeal, 304 Pa. 437, 155 A. 859, but the facts of that case are so materially different that our ruling there can have no application in the instant case. In the Lancaster County case the bank lent money to a contractor whose contract with the State stipulated that the semi-final and final payments for the work would be withheld until all claims for labor and material had been satisfactorily settled. In this situation we held that the contractor's assignment to the bank of his semi-final payment did not entitle the bank to receive that payment in preference to the surety, which had paid the claims of materialmen and stood subrogated to their rights, because in lending the money the bank had notice that the claims of materialmen and those standing in their shoes were entitled to priority in payment out of the fund in question. The distinction between that case and the instant one is obvious; here there was nothing to put the bank on

notice that there might be an adverse claim to the warrants given Frunzi by the city. No statute or ordinance required the withholding of payments for the benefit of materialmen, there was no provision in the contract to that effect, and there was an express stipulation in the contract that payments could not be assigned. Clearly, in the absence of a statute or ordinance so providing, the city was under no obligation to see that labor and materialmen were paid before making payments to Frunzi (Phila. v. McLinden, 205 Pa. 172, 54 A. 719; McCarthy v. Bridgeport Boro., 299 Pa. 305, 149 A. 484; Sundheim v. Phila. S. Dist., 311 Pa. 90, 166 A. 365). The warrants conveyed to the bank no knowledge that Frunzi's surety had an equitable lien thereon.

In thus permitting Frunzi to receive the warrants and deal with them as his own property, although he was failing to pay the materialmen as he was bonded to do, appellant was unquestionably guilty of laches. Appellant at all times had the right to examine Frunzi's books, or to ascertain from the bank the state of his account. Had it done so at any time during the progress of the work, it would have discovered that he was not paying some of his material bills, and could have protected itself. In now seeking to recover its losses from the bank which in good faith financed the progress of the work, appellant is attempting to shift to another a loss which by due diligence on its part might have been avoided.

Since, therefore, the bank had no constructive notice of appellant's claim, the first notice which it did receive was the actual notice given by the appellant's formal demand, on June 16, 1932, for the warrant in its possession. As Frunzi had delivered all the warrants before that time, the bank was an innocent purchaser without notice, and held the warrants (and a fortiori the bonds for which certain of the warrants had been exchanged) free of any latent equities in appellant's favor: Collins's Appeal, 107 Pa. 590; Kane v. First

National Bank, 59 Fed. (2d) 534; Third National Bank v. Detroit F. & S. Co., 65 Fed. (2d) 548; Restatement, Contracts, section 174. It was, therefore, entirely proper for the bank to use them to satisfy the debt for which they were pledged.

The principles applicable are not dissimilar to those governing the analogous situation where the contractor has assigned his equipment to his surety but retains the use and possession, the surety receiving the right of taking possession in the event of a default. In such case we have held, not only that one who, without notice of the assignment, lends money to the contractor on the security of the equipment is an innocent purchaser with a right superior to that of the surety (Newman v. Globe Indemnity Co., supra), but that an assignment without delivery until within four months of pledgor's bankruptcy is invalid against the contractor's trustee in bankruptcy: Gernerd v. Union Indemnity Co., 311 Pa. 169, 165 A. 405.

Appellant further argues that the final warrant of May 16 was never delivered by Frunzi to the bank as security to be pledged for the Ventresca note, but was merely deposited for collection, and that the bank seized the warrant without Frunzi's consent and applied it against that note—of which he was only an endorser—when it learned of appellant's claim. However this may be, and even if Frunzi did not voluntarily pledge his final payment from the city against the Ventresca note, appellant's claim to the warrant and its proceeds is still inferior to that of the bank. After the maturing of the Ventresca note on June 10, Frunzi, although only an endorser, became a principal debtor thereon: Franklin Savings & Trust Co. v. Clark, 283 Pa. 212, 129 A. 56. Thereafter the bank could satisfy this indebtedness by any property of Frunzi's it possessed (First National Bank v. Shreiner, 110 Pa. 188, 20 A. 718; Mechanic's and T. Bank v. Seitz, 150 Pa. 632, 24 A. 356; First National Bank v. Peltz, 176 Pa. 513, 35

A. 218), provided it had first exhausted the property of the maker in its hands: Franklin Savings & Trust Co. v. Clark, supra. And it was not necessary for the bank to make an "appropriation" of the warrant to this note before receiving notice of appellant's claim in order successfully to assert its priority: Aarons v. Public Service B. & L. Assn., 318 Pa. 113, 178 A. 141. However, the undisputed testimony is to the effect (the chancellor made no finding on this point) that the president of the bank told Frunzi at the time he deposited the warrant, that it would be held by the bank against the Ventresca note. Appellant's argument based upon Kurtz v. County National Bank, 288 Pa. 472, 136 A. 789, that deposits and other items owed a depositor may not be appropriated by a bank in satisfaction of his unmatured debts has no application; here the claims of the bank were matured when it attempted to set off against Frunzi's indebtedness the bonds and warrants which it had received as an innocent purchaser.

Appellant also claims that the bank unlawfully retained the $2,017.75 realized from the sale of the bonds, over and above the amount of the note for which they were pledged. In this instance, as in the case of the warrant considered above, the bank was likewise free to apply to Frunzi's matured indebtedness any property of his in its hands. Furthermore, the note for which the bonds were originally pledged expressly provided that the bank might hold the collateral for other obligations of the maker. Under such a provision the law is clear that the surplus proceeds from the sale of the collateral after payment of the original obligation may be used by the bank to satisfy other matured obligations of the maker: Miles v. Centennial National Bank, 90 Pa. Superior Ct. 341.

The decree of the court below is affirmed at the cost of appellant,