# Wallace's Appeal.

1. As a general rule, a pledgee must take possession of the thing pledged in order to acquire a valid title as against the creditors of the pledgor.

2. An exception to this rule is recognized in the case of the pledge by a partner of his interest in his partnership, to secure a loan of money which is put into the firm as part of such partner's capital, the pledgor, by agreement with the pledgee, to retain possession. In such case, the pledgee's right is superior to the claims of general creditors and all others claiming under the pledgor, except purchasers for value without notice.

3. The purchaser of a partner's interest, whether at private or at judicial sale, acquires merely the right to demand an account from the other partners, and to receive a certain share of the balance remaining after the payment of the partnership debts and the adjustment of the partnership equities. This right is an intangible thing, and can only be reduced to possession by a demand for an account.

4. A., being a partner with B. and C., in the firm of B., A. & Co., borrowed money to increase his capital in the firm, and gave D., his indorser, a bill of sale of his interest in the partnership, with the right to take possession of, and convert that interest to his own use, in case the note was not paid at maturity. The transaction was bona fide, but no notice was given of it to the other members of the firm, and A. was at the time indebted on his individual account to E., to whom he confessed judgment to secure his debt. Some time after the maturity of the note indorsed by D., notice of the assignment was given to E., who issued execution and levied on A.'s interest in the firm. D. then gave notice of his claim to B. and C., and demanded possession of A.'s interest, and also gave notice of the assignment at the sheriff's sale, when A.'s interest was sold to B. and C., E. being fully paid out of the proceeds. D. filed a bill in equity against A., B., C. and E., praying for an account, a receiver, and payment by B. and C. of the sum found due from them in respect to A.'s share in the firm. *Held*,

(1) That in the absence of fraud and collusion the bill should be dismissed as to E. with costs.

(2) That A., B. and C., should be decreed to pay to D. the amount of his claim with costs of suit.

November 6th 1883.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.    CLARK, J., absent.

APPEAL from the Court of Common Pleas No. 2 of *Allegheny county:* In equity. Of October Term 1883, No. 203.

Bill in equity, by R. P. Wallace against Edward Agnew, John Fleming, John Hamilton and David Sands, praying for an account of Edward Agnew's interest in a partnership formerly existing between him and Fleming and Hamilton, a receiver, and a decree for the payment by Fleming and Hamilton of such sum as should be found due from them in respect of Agnew's interest in the firm.

Three answers were filed by Agnew, Fleming and Hamilton,

and Sands; and the cause was referred to John E. Shaw, Esq., as Examiner and Master. From his report the facts appeared as follows:

On April 1st 1880, John Fleming, John Hamilton and Edward Agnew were partners doing business as Fleming, Agnew & Co., the capital in the firm credited to each partner being about as* follows, viz: John Fleming $10,000; John Hamilton $16,000; Edward Agnew $3,000. Agnew, desiring to make his interest in the firm equal to that of his copartners, requested R. P. Wallace, plaintiff, to indorse for his accommodation a note dated April 1st 1880, at ten months in the sum of $14,500, informing Wallace at the time of procuring his indorsement that the proceeds of said note would be placed to his (Agnew's) credit in the firm of Fleming, Agnew & Co., and tendered Wallace as security an assignment of his interest in the firm of Fleming, Agnew & Co. Wallace indorsed the note, and as security and indemnity against his future liability on said note Agnew executed and delivered to Wallace, April 1st 1880, the following bill of sale of his interest in the copartnership:

"Whereas, R. P. Wallace of the city of Allegheny, has this day indorsed my note of this date, for fourteen thousand five hundred dollars, payable in ten months; for the purpose of securing said R. P. Wallace from loss on account of said indorsement, I hereby sell, assign, transfer and set over to him, his heirs and assigns, all my interest in the firm of Fleming, Agnew & Co., now engaged in the manufacture of stamped and other goods, and wholesale business, in the city of Pittsburgh; and in case said note is not paid by me at maturity, said R. P. Wallace may at once take possession under this instrument and convert said interest to his own use and benefit, free from any claim by me or my personal representatives.

"Witness my hand and seal this first April 1880.

"EDWARD AGNEW."

(The assignment as printed in the paper book was not under seal.)

The proceeds of said note, being $12,500, were placed to the credit of Edward Agnew in the firm of Fleming, Agnew & Co.

Agnew then considered his interest in the firm worth about $25,000, sufficient to pay the claim of Sands and Wallace in full, and in January 1881, tried to buy out his partners, offering them a bonus for their shares.

At the time Wallace indorsed the above note for the accommodation of Agnew, the latter was indebted to D. Sands in the sum of $9,500, representing indorsements made by Sands for the accommodation of Agnew, covering a period of ten years, and of which Wallace had no knowledge at the time of indorsing said note of Agnew. In 1877 or 1878, Sands became

liable as joint maker on the note of Edward Agnew in the sum of $5,000, the proceeds of which were put into the firm of Fleming, Agnew & Co. Subsequently, the holder of said note desiring real estate security for the loan, Sands gave to him his bond and mortgage dated February 1st 1879, in the sum of $5,000, on his separate and private property, and took up the $5,000 note on which he was joint maker with Agnew, and on the same day (February 1st 1879) Sands took a judgment note from Agnew for the amount of the mortgage, $5,000, due one day after date. The aforesaid mortgage was paid by Sands, March 22d 1881. The remaining $4,500, represented Sands' liability as indorser for Agnew, covering a period of ten years, and, as security, Sands held a policy or policies on the life of Edward Agnew. H. C. Bair advanced the money on the note on which Wallace was indorser, and became the holder of the note, and he knew of the arrangement between Wallace and Agnew to secure Wallace against loss on account of his liabilities as indorser.

On the 17th or 19th of January 1881, Agnew gave notice to Sands of the note he had given upon which Wallace became liable as indorser and that he had given Wallace a paper securing him on his (Agnew's) interest in the firm of Fleming, Agnew & Co. against loss for or on account of said indorsement. Sands thereupon demanded of Agnew a judgment note for the above mentioned $4,500, which represented partly money paid for Agnew's account, and partly his liability as indorser for accommodation of Agnew on notes not yet matured. On January 24th 1881, Agnew executed and delivered to Sands a judgment note for $4,500 due one day after date. Prior to the execution of said note, Agnew gave to Sands the full outline and details of the nature and character of the paper he had executed to Wallace, and told him it was a bill of sale of his interest, and also informed Sands when the note on which Wallace was indorser became due.

On February 2d 1881, Sands entered judgment on these notes amounting to $9,500 and issued execution thereon, under which the sheriff levied on the interest of Edward Agnew in the firm of Fleming, Agnew & Co. Upon the same day, prior to the levy, Fleming and Hamilton received verbal notice of Wallace's claim, and a few hours after the levy, Wallace served a notice in writing on Fleming, Agnew & Co., demanding possession of the latter's interest in the firm by virtue of his assignment. On February 14th 1881 the interest was sold at sheriff's sale to Fleming and Hamilton, Agnew's copartners, for $10,000. Sands was present at the sale, at which the following notice was given by Wallace's attorney:

"Persons bidding at the sheriff's sale of Edward Agnew's

8 OUTERBRIDGE.—36

share or interest in the firm of Fleming, Agnew & Co., are notified that on the 1st April 1880, the said Agnew executed and delivered to the undersigned a bill of sale for the said share to secure and indemnify the undersigned for his indorsement of the said Agnew's note for $14,500; that the plaintiff in this execution, D. Sands, had full knowledge of the premises before entering his judgments and issuing execution thereon; and that any person purchasing at this sale will only take such balance of such share, if any, as may remain after payment of the said claim of the undersigned, which, with interest, now amounts to $13,125, the said note not having been paid at maturity and the undersigned being liable therefor."

The purchase money, amounting to $10,700, was paid to the sheriff by Fleming and Hamilton and a deed or bill of sale was executed to them conveying all the right, title and interest of Agnew in the firm of Fleming, Agnew & Co. The purchase money was paid to Sands in satisfaction of his claim.

The Master found as a fact that the execution and delivery of the bill of sale by Agnew of his interest in the partnership to Wallace was bona fide, for valuable consideration, and without actual fraud. No formal delivery was then or at any time prior to the levy and execution on the Sands judgment, made by Agnew to Wallace; nor was there any change in the conduct of Edward Agnew, or in his relation to or connection with the firm of Fleming, Agnew & Co. from that time until the date of the execution and levy. Nor was there any collusion or fraudulent arrangement between Sands and Fleming and Hamilton by which Sands was to act in their interest as against Wallace. The Master further reported that "On the first of April 1880, the only creditor Agnew had, so far as the evidence in this case shows—or, at least, the only creditor contesting the validity of the bill of sale or mortgage from Agnew to Wallace—was D. Sands, and the only means Agnew had of paying his debts was a capital of about $3,000 in the firm in which he was a partner, and the good will of the business, which is always of very unstable value.

"Upon the name and credit of Wallace he is enabled to place himself on equal footing with his copartners, and in a position to continue his business, which could certainly have worked no injury, but rather a benefit to any other creditor he might have; and Agnew gave to Wallace the only security he could give upon his interest in the copartnership made valuable by the money raised upon the name and credit of Wallace. The bill of sale, or mortgage, from Agnew to Wallace was a legal and valid instrument, and, as between them, effectual as a pledge of Agnew's interest in the copartnership to secure Wallace from all loss resulting from the loan of his credit for Agnew's ac-

[Wallace's Appeal.]

commodation: Bismark Building and Loan Association v. Bolster, 11 Norris 128.

"The only question then is whether it is void as against Sands —the only creditor contesting its validity—with notice of Wallace's claim, prior to judgment; or as against Fleming and Hamilton purchasers, with notice at sheriff's sale."

After an elaborate examination of this question, the Master reported a decree that the bill be dismissed as to Sands with costs, and that Agnew, Fleming and Hamilton should pay to Wallace $14,302, the amount of his claim $12,500 with interest from April 1st 1880, with the costs of suit.

Exceptions to the Master's report filed by Fleming and Hamilton were sustained by the court in an opinion by Ewing, P. J., and a decree was entered dismissing the bill at the costs of complainant. Wallace thereupon took this appeal assigning for error, inter alia, the action of the court in sustaining the exceptions filed to the report of the Master and in entering the above decree.

*George Shiras, Jr.* (with whom was *W. B. Rodgers*), for appellant.—The rule requiring change of possession is not an express statutory rule requisite to a valid sale, but a mere judicial rule of policy limited in its application by the reasons which dictated it. Where there is no collusion, a delivery is required only for the purpose of giving notice of the sale, not to general creditors, but to execution creditors and purchasers: Smith v. Stern, 17 Pa. St. 360; Kendall v. Samson, 12 Vt. 515; McMarlan v. English, 74 Pa. St. 296; Feig v. Meyers, 13 Pitts. Leg. Journal N. S. 481.

This is on the principle of the common law, which was merely declared and enforced by the statutes of 13 and 27 Elizabeth. Delivery may be either impossible or omitted for a fair and honest purpose. In any case it must be *secundum subjectam materiam:* McKibbin v. Martin, 14 P. F. Smith 352; Benford v. Schell, 5 P. F. Smith 393; Chase v. Ralston, 6 Cas. 540; Dunlap v. Bournonville, 2 Cas. 72; Hugus v. Robinson, 12 Harris 9. Here Wallace depended on Agnew's good faith to protect the assigned property against the claims of third persons, and the notice given by Agnew to Sands and to Fleming and Hamilton before the executions were issued was equivalent to an actual delivery: Clow v. Woods, 5 S. & R. 275; Crawford v. Davis, 99 Pa. St. 576; Billingsley v. White, 59 Pa. St. 464; Barr v. Reitz, 53 Pa. St. 256; Parks v. Smith, 94 Pa. St. 46; Pearson v. Carter, 94 Pa. St. 156; Sheldon v. Sharpless, 2 Weekly Notes 311; Barr v. Boyles, 96 Pa. St. 31; McPherson v. Kinntar, 12 Weekly Notes 40; Frantz v. Ruggles, 7 Luz. Leg. Reg. 73; Evans v. Scott, 89 Pa. St. 136.

*Dalzell* (with whom was *Hampton*), for the appellees.—
The mortgage or assignment was fraudulent and void as to
creditors, whether their debts were contracted after or before it:
Clow *v.* Woods, 5 S. & R. 275. In this case, the question was
solely one of law as there was an express provision that the
vendor should retain possession: Milne *v.* Henry, 4 Wright
352. Especially is an assignment subject to the rule requiring
a transfer of possession: Welsh *v.* Bekey, 1 P. & W. 60;
Elliott's Appeal, 14 Wright 75; Woodbridge *v.* Perkins, 3 Day
364; Whigham's Appeal, 13 P. F. Smith 198. There was nothing
in the nature of the interest conveyed to prevent immediate notice
and assumption of possession. If it could be done on non-pay-
ment of the indorsed note it could have been done at once. This
not having been done, subsequent notice cannot avail: Stark *v.*
Ward, 3 Barr 328; Hower *v.* Geesamann, 17 S. & R. 254;
Pritchett *v.* Jones, 4 Rawle 260.

The opinion of the court was delivered January 7th 1884,
by Mr. Justice TRUNKEY.

In Collins' Appeal, from the Orphans' Court of Philadel-
phia, 15 W. N. C. 5, the contract was construed to be "a
pledge of Hulse's interest in the capital of a limited partner-
ship, intended to be formed thereafter, and actually so formed,
the purpose of which was, to furnish rolling chairs for the
Centennial Exhibition." And "an actual present pledge by
Hulse to Collins of a partnership interest which he was to
acquire in the future with the money loaned him by Collins,
that Hulse was to be in the possession of the interest until such
time as Collins might demand an assignment of it, and upon
such demand being made, Hulse was to make the assignment
and deliver possession of the said interest to Collins." Hulse
never transferred possession of the subject of the pledge to
Collins, the fund for distribution was raised from the sale of
that subject, and the question was, "whether a valid and bind-
ing pledge can be given of the interest of the pledgor in a
partnership to be subsequently created so as to secure to the
pledgee a priority of lien as against the unsecured creditors."
It was ruled that from the moment the interest came into exist-
ence it was subject to the operation of the pledge, that as Hulse
was bound by his contract, all claiming under him were so
bound, except purchasers for value without notice, and that the
right of a general creditor is inferior and subordinate to that of
the pledgee.

To repeat the reasoning and exhaustive review of the
authorities by Justice GREEN in that case, would be vain. He
remarks that "possession of the subject of the pledge is an
almost universal requirement in the law of pledge to perfect

the pledgee's title;" also notes the distinction between a mortgage and pledge, and puts stress upon the fact that such distinction is disregarded, where, by the agreement of the parties, the pledge is to remain with the pledgor, in which case, as he is bound by his contract, so all are bound who claim under him, except innocent purchasers; and adds that as that doctrine has been applied in the case of specific chattels it would apply with much greater force in case of an expectancy or intangible interest. Hulse pledged an expectancy of an intangible interest, the pledge operated upon that interest as soon as it came into existence, the interest remained in possession of the owner who controlled it with his partners, and such possession was in accord with the agreement, for Collins did not demand an assignment.

Fleming, Agnew & Co. were partners, and, on April 1st 1880, Agnew borrowed $12,500, which he put into the firm as capital. Wallace, knowing that the money borrowed was to be used to increase Agnew's interest in the partnership, indorsed for Agnew and took a bill of sale or mortgage of said interest, to secure him from loss on account of said indorsement, with right to take possession and convert said interest to his own use and benefit upon non-payment of the note at maturity. At the date of this transaction Agnew was indebted to Sands in the sum of $9,500 of which Wallace had no knowledge. Agnew's partners, Fleming and Hamilton, as well as Sands, had neither notice nor knowledge of the mortgage until immediately before the execution was issued by Sands, upon which Agnew's interest in the partnership was seized and sold. The Master and court below agree that there was no intention on the part of Agnew to defraud Sands, that Wallace did not know of Agnew's indebtedness to Sands, that the loan and bill of sale were not intended to and could not defraud the other partners, and that on the part of Wallace there was entire good faith and absence of all actual fraud; and no other conclusion is warranted by the testimony.

By the agreement, Agnew was to retain possession of the mortgaged interest until maturity of the note—a period of ten months. He had joint possession with his partners of the entire property of the partnership, and the direct implication of the agreement is, that Agnew and Wallace intended that the business of the firm, until the end of said period, should be conducted as if the bill of sale had not been made. Both were interested in the prosperity of the business. A transfer of possession was, in fact, impossible, for Agnew had no separate possession, nor had he the right to put another man in his place as a partner in the business. "Partners have no separate title in any aliquot part of the partnership property. Their interest is an incorporeal, intangible thing—a right to an account, and

[Wallace's Appeal.]

to their share of the balance after all the partnership debts are paid and all equities between the partners adjusted :" Whigham's Appeal, 63 Pa. St. 194. When the parties say that Wallace "may at once take possession" in case the note shall not be paid by Agnew at maturity, they mean that the right shall then vest in Wallace to demand an account. That is the right of the purchaser of a partner's interest either at a private or judicial sale. In the interest itself is the reason why Wallace, as mortgagee or pledgee, could not have taken actual possession, and the circumstances show good faith in the naming of a future time when he should be clothed with the right to ascertain the amount or value of his security and recover the same.

Upon the authority of Collins' Appeal, Wallace had a valid lien as against the general creditors of Agnew. Sands had full notice of the lien before he did any act for recovery of his debt. Fleming and Hamilton purchased with like notice, and they hold subject to the right in Wallace. We are of opinion that the appellant is entitled to a decree in accord with the Master's report.

The general rule that possession of the thing pledged must be taken by the pledgee to make the pledge valid against the creditors of the pledgor, was recognized in Collins' Appeal, and the pledge of an interest in expectancy, or of an intangible interest, under certain circumstances, was considered an exception. Whether, in Pennsylvania, there can be any other exception need not now be determined.

And now, January 7th 1884, upon consideration of this cause, it is ordered, adjudged and decreed that the decree be reversed ; that the bill be dismissed as to the defendant, David Sands, with costs ; that the defendants, Edward Agnew, John Fleming and John Hamilton, pay to the plaintiff the sum of fifteen thousand three hundred and twenty-seven dollars ($15,327), with costs of suit, including the Master's fee and the costs of this appeal ; and that the record be remitted for the execution of this decree.

April 1, 1880, . . . $12,500
Int. to Jan. 7, 1884 . 2,827

　　　　　　$15,327