## Davis *v.* Billings, Appellant.

*Bankruptcy — Trustee's title — Character — Conflict of laws — Claims against trustee.*

1. A trustee in bankruptcy is vested with no higher or better right or title to the property than the bankrupt had when the trustee's title accrued, and unless in contravention of some established principle of law or public policy a claim valid against the bankrupt will be held valid against the trustee.

2. Unless the bankruptcy law otherwise provides, the validity of an assignment or claim is to be determined in accordance with the principles of the local law.

*Pledgor and pledgee—Retention of possession by pledgor—Validity of pledge.*

3. While in ordinary cases of pledges of personal property possession of the pledge by the pledgee is indispensable to the validity of the pledge, where by agreement of the parties, possession is to remain with the pledgor, all are bound who claim under the latter except purchasers for value without notice.

4. An executory agreement whereby the owner of personal property discloses an intention to make the property mentioned in the agreement security for a debt or other obligation creates an equitable lien upon the property indicated, enforceable against the property in the hands of not only the original pledgor but of his heirs, administrators, executors, voluntary assignees and purchasers or encumbrancers with notice.

*Bankruptcy—Preferences—Validity—Pledge—Action by trustee against pledgee—Defenses—Case for jury.*

5. In an action by a trustee in bankruptcy to recover sums paid defendant by the bankrupt within four months of the bankruptcy and at a time when he was insolvent, the trial judge erred in refusing defendant's offer to prove that the sums so paid were the proceeds of the sale of automobiles which more than four months prior to the bankruptcy the bankrupt had agreed to pledge with

defendant to protect him from liability on certain notes of the bankrupt which he had endorsed and judgment for the plaintiff was reversed with a venire.

Argued April 10, 1916.   Appeal, No. 399, Jan. T., 1914, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1912, No. 677, on verdict for plaintiff, in case of Fred B. Davis, Trustee in Bankruptcy of W. C. Moore, Trading as W. C. Moore Auto Company, v. W. P. Billings.   Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.   Reversed.

Assumpsit to recover a preference alleged to have been paid by a bankrupt to a creditor within four months of bankruptcy.   Before O'BOYLE, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $16,975.75 and judgment thereon.   Defendant appealed.

*Errors assigned* were rulings on evidence.

G. J. Clark, for appellant.—The execution and delivery of the bill of sale by Moore to Billings without reservation or condition of any kind transferred title to the automobiles absolutely to Billings, regardless of the transfer of possession; as between Billings and Moore, the cars became the property of Billings more than four months before the bankruptcy of Moore: Hetrick v. Campbell, 14 Pa. 263; Janney v. Howard, 150 Pa. 339; Croft v. Jennings, 173 Pa. 216; Christ v. Zehner, 212 Pa. 188; Boyle v. Rankin, 22 Pa. 168; Klein v. Patterson, 30 Pa. Superior Ct. 495; Hineman v. Matthews, 138 Pa. 204; Durr v. Replogle, 167 Pa. 347; Powell v. Clawson, 38 Pa. Superior Ct. 245; Stephens v. Gifford, 137 Pa. 219; White v. Gunn, 205 Pa. 229; Bank of No. America v. Penn Motor Car Co., 235 Pa. 194; Post v. Berwind-White Coal Mining Co., 176 Pa. 297.

Where State court decisions have held agreements to

pledge personal property, although delivery was not made until after the agreement to give the lien, valid except as against intervening creditors, the delivery of the property by the debtor subsequent to the agreement to give the lien will not constitute a voidable preference under the Bankruptcy Law: Coggan, Trustee, v. Ward, et al., 31 Am. Bk. Rep. 844.

*W. Alfred Valentine,* with him *F. W. Wheaton* and *W. H. Goodwin,* for appellee.—If possession had been taken by the appellant at the time of the endorsements, a valid lien would have been secured; a failure to take possession cannot be enlarged by the indirect method of sale of the automobiles, and the application of the proceeds for appellant's benefit, without any consideration, and after knowledge of Moore's insolvency; such conduct amounts to an admission of a defect of title.

When the real transaction is a loan of money upon the security of property it is to be deemed a mortgage or pledge and not a sale of the property regardless of the facts in which the parties choose to veil their transactions: Spering's App., 60 Pa. 199.

Possession is the essence of a pledge and without possession no privilege can exist as against third persons: Casey v. Cavaroc, 96 U. S. 467; Clow v. Woods, 5 S. & R. 275; Girard Trust Co. v. Mellor, 156 Pa. 579; Bank of No. America v. Penn Motor Car Co., 235 Pa. 194.

The conclusion is irresistible and indisputable that as against creditors, Billings never acquired any ownership or a valid lien on or pledge of the automobiles: Duplex Printing Press Co. v. Clipper Publishing Co., 213 Pa. 207; Security Warehousing Co. v. Hand, 206 U. S. 415; Fourth St. Nat. Bank v. Millbourne Mills Co.'s Trustee, 22 Am. Bk. Rep. 442; Adams v. Merchants' Nat. Bank, 9 Biss (U. S.) 396 (2 Fed. 174); Torrance v. Winfield Nat. Bank, 11 Am. Bk. Rep. 185.

OPINION BY MR. JUSTICE STEWART, July 1, 1916:

One W. C. Moore, a dealer in automobiles, doing business at Forty Fort in Luzerne County, was on his own petition adjudged a bankrupt on the 22d day of December, 1911, by the United States Court for the Middle District of Pennsylvania, and the appellee was appointed trustee of the bankrupt's estate. Within four months next prior to this adjudication Moore had sold and disposed of a large part of his stock in trade, not in the regular course of his trade or business, but manifestly in contemplation of insolvency, and with a view to prefer and secure the appellant who was his endorser upon several matured and maturing obligations. With the proceeds of these sales, made within four months prior to the bankruptcy proceedings, Moore paid on these notes the sum of $15,575, thus extinguishing the entire liability of the appellant. The present action was brought by the trustee in bankruptcy against the appellant to recover for the general creditors the amount which Moore had applied to the payment of the notes on which appellant was liable as endorser, on the ground that such payment constituted an illegal preference. The defense attempted to be set up was that the endorsement of these several notes was pursuant to an arrangement between Moore and appellant whereby appellant acquired immediately upon the purchase and delivery of the automobiles to Moore, which antedated the four months' statutory period, if not an absolute title to the same, an equitable lien thereon, the enforcement of which by surrender or sale was not repugnant to the bankrupt law, notwithstanding it occurred within the statutory four months' period. The offer of evidence in support of this defense was rejected, and it was submitted to the jury to find, first, whether Moore was insolvent at the time the preference was given to the appellant, that is to say, on or about October 1st and subsequent thereto, when the retirement of these notes occurred, and, second, whether the defendant—here the appellant—had reason-

able cause to believe that Moore was in an insolvent con-
dition. Both questions were decided in favor of the plain-
tiff, and accordingly the jury returned a verdict in favor
of the plaintiff in the sum of $16,975.75. A new trial
having been refused, judgment was entered on the ver-
dict, and this appeal followed.

Nothing is complained of in the three assignments of
error except the action of the court in rejecting the de-
fendant's offers of evidence. These offers all raise the
same question, and for present purposes may be treated
as one. It will be quite sufficient to confine our atten-
tion to the first. This offer was made with Moore upon
the stand, called as witness for the defendant.

"First, that at the time of the original endorsement by
Billings, in the winter of 1911 and prior to any endorse-
ments being made, there was an agreement that Billings
would endorse these notes; that the cars should be the
property of Billings, that they should be taken into the
possession of Moore and held by him for sale, that when
sold the cost price of the car entering into the particular
sale should be applied on the note Billings had endorsed,
and that pending a sale, Billings had the right to take
the car at any time and sell it and apply the cost price
on the note originally endorsed, and that bills of sale
absolute in form should be executed and delivered to
Billings by Moore for cars so purchased under such en-
dorsement.

"Second, that in pursuance of this agreement Billings
endorsed several notes, among them being at least three
of the notes involved in this action, aggregating about
two-thirds of the amount here involved where the original
endorsements were entered into upon the agreement of
the pledge of the cars as above stated.

"Third, that contemporaneously with said endorse-
ments or very soon thereafter Moore executed and de-
livered to Billings a bill of sale absolute in form, being
the same form as the one proposed to be offered in evi-

dence here, now marked 'Exhibit No. 1,' and delivered the same to Billings who thereafter held them.

"Fourth, that the cars involved in this bill of sale remained with Moore under that agreement, for sale, and some were actually sold and at least part of the proceeds applied in reduction of the note as originally given.

"Fifth, that on or about the 3d day of June, 1911, Billings obtained a bill of sale of all the cars except Matheson's to which he then claimed title under the original bills of sale, which bill of sale of June 3, 1911, covers fifteen automobiles.

"Sixth, that in the Matheson bills of sale subsequent to their being given originally, there were a number of changes of cars by agreement of parties and substitution of other cars, and then on or about the 15th of June, 1911, Moore executed and delivered to Billings a bill of sale for five Matheson cars then in Moore's possession as security for these endorsements and their future renewals.

"Seventh, that on or about the 30th day of July, 1911, Billings held bill of sale of nine Matheson cars in addition to the cars specified in the bill of sale of June 3, 1911, here produced, and also one motorcycle by separate bill of sale. That on or about the 20th of June, 1911, he demanded that the cars for which he held bill of sale should not be sold or disposed of except in pursuance of the agreement under which they were purchased but should thereafter be held and sold and the proceeds applied directly to the reduction of the note for which they were pledged and for which purpose these bills of sale were held.

"Eighth, that in pursuance of this demand and in the carrying out of this arrangement, Mr. Moore, by himself or with the aid of Mr. Billings, thereafter sold and disposed of the cars held by these bills of sale and applied the proceeds directly to the payment of the notes or their renewals, and this was all completed on or before December 1, 1911."

This offer was objected to as a whole, but special objection was urged to the portion of the offer involving the admissibility of the bill of sale, or agreement to execute bills of sale, for the reason that neither the bills of sale nor the alleged agreement created a lien upon either the automobiles or the fund, and the delivery having been made within four months of the proceedings in bankruptcy, it was voidable at the suit of the plaintiff, and, second, that the uncontradicted evidence of both Moore and the defendant was to the effect that the bills of sale were executed merely as collateral security to protect the defendant upon his endorsement, and the defendant's rights thereunder were simply those of a mortgagee or pledgee, and his failure to take possession of the automobiles invalidated his lien as against the claim of the trustee. The objection was sustained, and the evidence excluded, solely on the ground, as appears in the court's opinion filed in disposing of the motion for a new trial, that the failure of the defendant to take possession of the automobiles within four months prior to the bankruptcy proceeding invalidated his right as a lien creditor under the Bankrupt Act.

Assuming the facts to be as set out in the offer, in what position do they place the appellant with respect to Moore, and with respect to the property pledged? Unquestionably he would stand towards Moore as creditor to the extent of his endorsement, and towards the property as pledgee of the same. The fact that the property remained in the possession of Moore would not invalidate the pledge as between the parties to the contract. The only effect of retention of possession would be to make it an equitable pledge, one which in equity could be enforced between the parties and the then general creditors of the pledgor, but not against subsequent bona fide purchasers or pledgees for value. We are not concerned with the form of the instruments which are here called bills of sale. The parties agree that all that was intended by them was to furnish appellant with col-

lateral security as against his endorsements. The result is that these bills of sale, though purporting to be sales outright of the property to the appellant, are to be construed as so many executory agreements whereby the contracting party indicated an intention to make the particular property mentioned a security for a debt or other obligation. Such an instrument creates an equitable lien upon the property indicated, enforceable against the property in the hands not only of the original pledgor, but of his heirs, administrator, executor, voluntary assignee, and purchasers or encumbrancers with notice: 3 Pomeroy's Eq. Juris. Sec. 1235. In this case we must start with the agreement, which, without the bill of sale, was in itself at common law sufficient to establish a contract of pledge, and therefore sufficient to create an equitable lien: Sellers & Nicols v. Jones, 22 Pa. 423; Collins App., 3 Penny. 333. In the latter case it is held that while in ordinary cases of pledge of personal chattels possession of the pledge by the pledgee is indispensable to the validity of the pledge, where by the agreement of the parties the possession is to remain with the pledgor, all are bound who claim under the latter except purchasers for value without notice.

The next fact is the consolidation of these various bills of sale in the bill of June 3, 1911, and for present purposes we may dismiss from consideration the bills that were subsequently given, and by confining ourselves to this particular bill, the principle governing may be sufficiently illustrated. It will be observed that the date and delivery of this bill was not within the statutory period next prior to the bankruptcy proceedings, and up to the time of the surrender and delivery of the pledged property to the appellant in October and November, no lien by attachment or execution had been acquired by other creditor against the pledged property. Manifestly—leaving out of consideration for the moment the Federal Bankrupt Law—the completion of the original contract by this delivery of the property pledged, no

fraud being alleged in connection therewith, was legal and valid. The question here arises whether a surrender of property to a pledgee under such a pledge, valid in its inception but voidable by creditors because of nondelivery within four months of bankruptcy, constitutes an illegal preference except as against intervening claimants holding proved liens on the property in the meanwhile, where made in accordance with a previous agreement. Stating it somewhat differently; here admittedly was a preference, the question is when did that preference occur? with the transfer of the automobiles in October and November? or with the antecedent contract of pledge? If with the actual transfer of the property, then since that occurred within the four months preceding the proceedings in bankruptcy, the preference would be voidable at the suit of the assignee; if, at the date of the executory agreement, then the rights of the transferee are to be determined by the situation then existing, and that being back of the statutory period, the bankrupt law will not operate to defeat the preference. It has been definitely decided that a trustee in bankruptcy is vested with no higher or better right or title to the property than the bankrupt had when the trustee's title accrued, and, unless in contravention of some established principle of law, or public policy, or some express provision of the Bankrupt Act, a claim valid against the bankrupt may be held valid against the trustee: Hewit v. Berlin Mach. Works, 194 U. S. 296. Another principle equally well settled is, that unless the bankrupt law otherwise provides, the validity of an assignment or claim is to be determined in accordance with the principles of the local law: Humphrey v. Tatman, 198 U. S. 91. In this latter case, one of the most recent deliverances of the United States Supreme Court with respect to the question we are now considering, it is held, overruling the decision of the Supreme Court of Massachusetts, that taking possession of a mortgaged property under an unrecorded mortgage thereof does not

amount to a preference voidable by the mortgagor's trustee in bankruptcy, although such action was within four months of the bankruptcy proceeding, if the possession so acquired is good against the trustee under the State law. The action in that case was, as here, to recover an alleged preference. One Davis had filed a voluntary petition in bankruptcy May 23, 1901. Two years before, on May 6, 1899, being then solvent, he executed to Humphrey a mortgage of his present and after acquired stock in trade, covering the goods in controversy; but the mortgage was not recorded, and the goods remained in Davis' possession. On April 30, 1901, Humphrey, having reasonable ground to believe Davis insolvent, took possession of the goods. Tatman became trustee in bankruptcy June 18, 1901, and demanded the goods without payment of the mortgage debt. Both in the Superior and the Supreme Court of the State the assignee's claim was sustained, but on appeal to the Supreme Court of the United States the judgment was reversed. The reversal was based on the sole ground that the mortgage on the stock of goods although unrecorded was a good and valid lien under the laws of Massachusetts. It was there contended on the part of the appellee that the lien set up by Humphrey was invalid under the laws of Massachusetts, because an operative statute there provides that "unless the property mortgaged has been delivered to and retained by the mortgagee, the mortgage shall not be valid against a person other than the parties thereto until it has been so recorded." In answer to this Mr. Justice HOLMES in his opinion says (p. 93),

"There are cases which indicate that an assignee in bankruptcy is a universal successor like an executor or a husband, and so that, as it is put in Lowell, Bankruptcy, Sec. 309, the assignee is the bankrupt. But it is the settled law of Massachusetts that such a fictitious identity does not satisfy the statute that the trustee in bankruptcy is 'a person other than the parties thereto' and that therefore as against him the mortgage is void.

As the Supreme Court of Massachusetts says that taking possession of the mortgage within four months would be valid as against the trustee in bankruptcy, but for supposed peculiarities of the present bankrupt law, and as Thompson v. Fairbanks, 196 U. S. 516, although distinguishable from the present case, decides that it is valid under the present bankruptcy law if good by the laws of the State, it follows that the mortgagee was entitled to keep his goods and that the judgment against him was wrong."

It is impossible to distinguish this case from the one we are now considering. Under the law of this State a similar claim to that of Humphrey would have been good and valid against the mortgagor and those claiming under him. The plain logic of this case is that the recording of the mortgage was not essential to the mortgagee's right to retain the property as against the trustee in bankruptcy. In view of this decision, the case of Woods v. Klein, 223 Pa. 256, is in point, as showing the attitude of our own court with respect to the general proposition under consideration. In that case the mortgage had been recorded, but possession of the mortgaged property was taken within the four months' period. This court speaking through Mr. Justice BROWN, now the Chief Justice, said (p. 265),

"The appellee acquired no right or lien as a preference over other creditors of the appellant within four months of the institution of the bankruptcy proceeding. What he did within that period was the exercise of a right and the enforcement of a lien which had been acquired eighteen months before. The right was to take possession of the mortgaged boat and sell it at any time upon the default of the mortgagor. The preference was obtained when the lien attached in 1905 and not when it was enforced in 1907. No provision of the Bankrupt Act contemplates that a valid lien, acquired more than four months before the filing of a petition in bankruptcy, shall be vacated by the bankruptcy proceedings, or that the

enforcement of such a lien by execution shall constitute an illegal preference: Owen, et al., v. Brown, 120 Fed. Repr. 812. There is a clear distinction between the bald creation of a lien within the four months and the enforcement of one previously acquired: Thompson v. Fairbanks, 196 U. S. 516. The lien that is invalidated by the Bankrupt Act is one created by a levy, attachment or otherwise within four months; where the lien is obtained more than four months prior to the institution of the bankruptcy proceedings, it is not only not to be deemed null and void on an adjudication of bankruptcy, but its validity is recognized. When the lien is obtained within four months, the property of the bankrupt is discharged therefrom, but not otherwise: Metcalf Bros. & Co. v. Barker, 187 U. S. 165."

The offer on part of defendant in the present case was to show facts and circumstances which, if the evidence were believed, would have established his right to the preference he acquired by the delivery of the automobiles, and as we have seen, such preference would not be voidable under the bankrupt law. It follows, therefore, that it was error to exclude the offer. The judgment is accordingly reversed, and a venire facias de novo awarded.