## Republic Trust Company v. F. A. Davis Company.

*Pledge—Transfer of possession—Pledgee cannot retain collateral where transfer is not made until after death of pledgor unless collateral be specifically described.*

The R. T. Co. sued the D. Co. on a promissory note for $2500, dated Feb. 25, 1918, made by the D. Co. in favor of the Central National Bank, and by it endorsed for value to the R. T. Co. The D. Co. refused to pay the note unless the R. T. Co. surrendered 100 shares of stock of the D. Co. owned by D. as an individual, and held by it as collateral, which had been transferred to it with the note by the bank. This the R. T. Co. refused to do under a claim to hold the same as collateral for the individual note of D., under a clause in D.'s note authorizing it to hold as collateral stock which at any time came to its hand belonging to D. D. died shortly before the endorsement of the note and the transfer of the stock by the bank to the R. T. Co.: *Held*, that the rights of other creditors of D. attached at his death, and, hence, the possession obtained by the R. T. Co. by the transfer of the stock by the Central National Bank did not create a valid pledge for D.'s individual debt, and the R. T. Co. could not retain the securities, and, therefore, could not recover on the note in suit. Judgment for defendant *n. o. v.*

Motion for judgment *n. o. v.* C. P. No. 1, Phila. Co., June T., 1919, No. 6483.

*O. J. Roberts*, for complainant; *W. H. Hepburn*, for respondent.

PATTERSON, P. J., June 3, 1922.—The Republic Trust Company has sued the F. A. Davis Company upon a certain promissory note for $2500, dated Feb. 25. 1918, made by the F. A. Davis Company, in favor of the Central National Bank, St. Petersburg, Florida, and by it endorsed to the Republic Trust Company.

At the trial it appeared that the F. A. Davis Company had always been ready and willing—in fact, had offered—to pay the full amount of the note, with interest and commission, provided the Republic Trust Company would turn over 100 shares of stock of the F. A. Davis Company, which had been pledged under the following circumstances:

On Feb. 14, 1914, F. A. Davis, who then was president of the F. A. Davis Company, gave his individual note for $2100 to the Republic Trust Company, the plaintiff in the case at bar. This $2100 note contains a number of provisions, amongst them being one to the effect that:

"The Republic Trust Company shall have a . . . lien upon any and all funds, stocks, bonds, notes and other property at any time in the hands of the said Trust Company belonging to the maker or endorser or endorsers, or guarantor or guarantors hereof, as a security for this note, and for any and all liability or liabilities, matured or unmatured, of such maker, endorser or endorsers, guarantor or guarantors to said Trust Company, which lien shall be enforceable in like manner, and shall be subject to all the provisions hereinabove and before mentioned and set out."

F. A. Davis died insolvent Jan. 12, 1917. At the time of his death there were 100 shares of capital stock standing in his name in the F. A. Davis Company and represented by certificates Nos. 25, 26 and 27. These stock certificates, together with blank powers of transfer, were then held by the Central National Bank of St. Petersburg, Florida, as collateral security for a $3500 renewal note of the F. A. Davis Company, dated at St. Peterburgh, Florida, Oct. 26, 1916, and endorsed by F. A. Davis individually.

The F. A. Davis Company from time to time renewed, or rather reduced, the $3500 note, so that it had become a four months' note in the sum of $2500, dated at St. Petersburg, Florida, Feb. 25, 1918.

On May 2, 1918, this note was endorsed and delivered for value, before maturity, by the payee to the Republic Trust Company, together with the stock certificates and powers of attorney already mentioned. At the time of

taking this note and the stock certificates the Republic Trust Company had notice of the death of F. A. Davis.

When the note matured on June 25, 1918, the F. A. Davis Company tendered to the Republic Trust Company the sum of $2500 and demanded the surrender of the note and the 100 shares of stock. As already indicated, the Republic Trust Company was willing to accept the money so tendered and cancel the debt, but refused to surrender the collateral, upon the ground that it was entitled to hold the same to secure the payment of the personal note of F. A. Davis for $2100, dated Feb. 14, 1914.

The trial judge, after the foregoing facts had been proven, directed the jury to render a verdict for the plaintiff (the Republic Trust Company) for the full amount of the renewal note, with interest from maturity and attorney's fees, as the instrument provided. Whereupon the defendant moved for a new trial, and also for judgment *n. o. v.*

## Question.

Considering this matter in its most favorable light, so far as the plaintiff is concerned, we have the case of a man who, for money loaned, attempts, by a written instrument, but without making delivery, or without using specific descriptive words, to create a lien upon certain shares of stock of which he is the owner. Subsequently the man pledged and delivered the shares of stock to some one else for another loan and then died insolvent.

*Quære.* Do the words and acts of the dead man create such a lien in favor of the first lender as to permit such lender to hold the stock in exclusion of the second lender and other *bona fide* creditors?

## Discussion.

The law appears to be well settled that all *bona fide* creditors acquire a lien upon a decedent debtor's estate, "and their rights by reason of this are no less sacred than the rights which are obtained by judicial proceeding:" Sheppard's Estate, 180 Pa. 57 (1897).

It also appears to be well settled that when a pledgee takes title to personal property without getting actual possession of it, he assumes all risk as to the integrity and solvency of his pledgor, in the event of subsequent *bona fide* purchasers or levying creditors appearing: Bank v. Motor Car Co., 235 Pa. 194 (1912).

The general rule that possession of the thing pledged must be taken by the pledgee to make the pledge valid against the creditors of the pledgor, of course, has its exceptions. One of these exceptions is the pledging of an interest in a partnership—either already existing or to be subsequently created. "In such a case, the subject of the pledge is necessarily incapable of manual possession or of actual delivery. It is in no sense a specific chattel, and even as a chose in action, it cannot be enjoyed in possession until after the partnership has been closed, the debts paid, the rights of the partners, as between themselves, adjusted, and the resulting amount due the pledgor ascertained; . . . it is intangible as a *res*. It may be something or or it may be nothing:" Collins's Appeal, 107 Pa. 590 (1883).

This case was approved and followed in Wallace's Appeal, 104 Pa. 559 (1883). It appears out of its chronological order, because it was not ordered to be reported when the opinion was filed. In Wallace's Appeal Mr. Justice Trunkey, speaking for the Supreme Court, said: "The general rule that possession of the thing pledged must be taken by the pledgee to make the pledge valid against the creditors of the pledgor was recognized in Collins's Appeal,

1 D. & C.

and the pledge of an interest in expectancy or of an intangible interest, under certain circumstances, was considered an exception."

As late as 1916 Mr. Justice Stewart, in Davis v. Billings, 254 Pa. 574, said of Collins's Appeal: "That, while in ordinary cases of pledge of personal chattels, possession of the pledge by the pledgee is indispensable to the validity of the pledge, where, by the agreement of the parties, the possession is to remain with the pledgor, all are bound who claim under the latter except purchasers for value without notice." We may, therefore, consider the law to be just as it was in the early 80's, and while the learned counsel for the plaintiff cites Collins's Appeal, Wallace's Appeal, and Davis v. Billings, yet he makes no serious contention that the shares of stock involved in the case at bar were "intangible as a *res*" when the decedent attempted to create the alleged lien in favor of the plaintiff.

In fact, it is quite evident to us that the plaintiff has failed to take its case out of the general rule which requires an actual transfer of personal property to the pledgee in order to create a lien good as against creditors.

Aside from this, the language the decedent used in attempting to create the alleged lien fails to mention or describe in any way the shares of decedent's stock upon which the plaintiff attempts to impose its lien. While it is true that no particular form of words is required to create a pledge of chattels, or to impose a lien thereon, yet the law is well settled that it must plainly appear that the parties intended to pledge or lien a particular chattel. The principle is thus broadly stated by Mr. Pomeroy in his book on Equity Jurisprudence, vol. 3, par. 1236: "The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party *sufficiently* indicates an intention to make some particular property, or fund therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey, or assign, or transfer the property as security, creates an equitable lien upon the property so indicated which is enforceable against the property," &c.

In the case at bar there is neither a transfer of the chattel nor an identification of the property upon which the plaintiff is to have a lien until, *and not until*, it comes into the possession of the Republic Trust Company. As we have already indicated, the stock did not come into the possession of the Republic Trust Company until after the decease of the pledgor, when the rights of other creditors had intervened.

There is one other question involved in this case, and that is whether the defendant is entitled to judgment *n. o. v.*, since the personal estate of F. A. Davis has passed into *the custody of the law* for administration. The present proceeding is merely a suit between a pledgee and a pledgor. It is well settled that a pledgee cannot deny the title of his pledgor, either by claiming title to the property himself or by setting up the claim of a third person: 31 Cyc., 807. *A fortiori*, nor can an endorsee's pledgee.

Whatever rights the administrators of F. A. Davis may have in the stock in controversy can be determined in another proceeding, and, perhaps, in another tribunal. We are simply dealing with the question involved in the present suit. In our opinion, the defendant in this case was justified in demanding a return of the stock of the F. A. Davis Company upon tendering the amount due upon the $2500 note for which the stock was pledged as collateral.

The motion for judgment *n. o. v.* is, therefore, granted, with an exception to the plaintiff.