## In re Dairyland, Inc.

*Isadore Rapoport,* of *Groman & Rapoport,* for exceptant.

*Edwin K. Kline, Jr.,* of *Kline & Kline,* and *John Ryan,* contra.

HELFRICH, J., March 13, 1944.—Normington Dairy, Inc., which later changed its corporate name to Avondale Farms Dairy, Inc., created for the purpose of "manufacturing, buying, selling and dealing in milk, cream, cheese and food products of all kinds", was reorganized under section 77-B of the Federal Bankruptcy Act on October 9, 1940. All of its prior creditors were fully paid, receiving part cash and part the equivalent thereof, i. e., debenture certificates of the corporation.

At that time the Reconstruction Finance Corporation loaned to Avondale Farms Dairy, Inc., which later again changed its name to Dairyland, Inc., the sum of $125,000, and as collateral security took, inter alia, a mortgage in that sum. This instrument, duly recorded, covering the real estate described therein, as well as all improvements, buildings, manufacturing plants, machinery, equipment, fixtures and furniture, continued further, as follows:

"Together with all letters patent, patent rights, trade-marks, and all applications therefor and all renewals thereof, and all trade names, which the mortgagor now owns or has any rights under, or may hereafter own or acquire rights under, or to which it now is or may hereafter in any manner become entitled, together with the good will and business of mortgagor in connection with which mortgagor's patents, patent applications, trade-marks and trade names are used, together with the good will and business of mortgagor in connection with which mortgagor's patents, patent applications, trade-marks and trade names hereafter acquired, may hereafter be used."

Dairyland, Inc., continued to operate the plant, but defaulted in the terms of its loan, so that on July 18, 1941, Reconstruction Finance Corporation entered judgment on its mortgage bond, in the amount of $127,393.22, and on the same day directed the sheriff to levy upon the property covered in the mortgage.

On August 11, 1941, Dairyland, Inc., made an assignment for the benefit of creditors of all its assets to John H. J. Reinhard and Elliott E. Pollard, which was duly recorded, and on the same day the foreclosure proceedings aforesaid were stayed by court order. Subsequent to July 18, 1941, after levy on the execution, and prior to the execution of the assignment recited, Dairyland, Inc., contracted to sell its milk routes, a part of its business representing a list of customers in and about the City of Bethlehem and its environs to Allentown Dairy, Inc., and Moyer Dairy Company. The Reconstruction Finance Corporation, upon learning of these sales, threatened injunction proceedings, contending the routes were covered by its mortgage.

Shortly thereafter these sales agreements were, by stipulation between counsel for Reconstruction Finance Corporation and the assignees, taken over by the assignees who collected from the purchasers the sum of $7,925.14, representing the total proceeds of the milk route sales. By this stipulation the fund was separately held by the assignees pending the determination of the question of its ownership.

Meanwhile, the foreclosure having been stayed, Reconstruction Finance Corporation permitted the assignees to liquidate the estate in the ordinary channels of liquidation, and the assignees sold all the fixtures, machinery, and personal property, for which it remitted the proceeds to Reconstruction Finance Corporation.

When the Reconstruction Finance Corporation was permitted to proceed with its foreclosure, the realty (land and buildings) alone was sold by the sheriff, and

bought by the execution plaintiff. The fair market value of this property, established by deficiency judgment hearing, and the liquidation of other assets by the assignees reduced the claim of Reconstruction Finance Corporation to $58,465.90.

The assignees filed a first and final account showing a balance of $17,351.87, which included the sum of $7,925.14 realized from sale of the milk routes. Reconstruction Finance Corporation then obtained a rule upon the assignees to show cause why this latter fund should not be turned over to it, to which an answer was filed. Exceptions to the account challenging the failure of the assignees to earmark the special fund as property of Reconstruction Finance Corporation were also filed. An auditor, duly appointed to take testimony and report upon the issues raised, awarded the special fund ($7,925.14) to Reconstruction Finance Corporation, further reducing the claim of Reconstruction Finance Corporation against the general fund to $50,540.76, and the balance for distribution to general creditors, after allowance of administration expenses and other priority claims, to $3,304.84. The assignees then excepted to the award of the "milk route fund to Reconstruction Finance Corporation".

It will be observed that the contest is entirely between Reconstruction Finance Corporation and the assignees for general creditors. Does Reconstruction Finance Corporation share to the extent of $58,465.90, with other general creditors of Dairyland, Inc., in a fund of $11,229.98, or does it share to the extent of $50,540.76 with other general creditors in a fund of $3,304.84? In other words, does the fund of $7,925.14 belong to Reconstruction Finance Corporation or to the general creditors of Dairyland, Inc.?

The supplemental question that the exceptions filed by assignees' counsel do not comply with local court rules is, without extended discussion, of no importance,

since the question raised is clear, involves a mixed question of law and fact, and furthermore, failure to consider them does not prejudice the party seeking to invoke them: McFadden v. Pennzoil Co., 326 Pa. 277. The decision of the question here involved is important to all parties and should not be delayed by resort to technicalities.

Reconstruction Finance Corporation contends that its mortgage validly covers goodwill and business of Dairyland, Inc., and as such covers the milk routes sold; that even if otherwise invalid the mortgage is valid as between it and the assignees for creditors, and in either case it is entitled to the fund. On the other hand, assignees contend that they stand in the shoes of the creditors, that they may contest the validity of the mortgage, that the subject matter here involved is personalty, not a fixture or necessary to the functioning of the dairy, and therefore the mortgage is void as to the general creditors, and they are entitled to the fund for distribution to such creditors.

Counsel for the assignees, in his brief of argument, flatly admits that the milk routes were a part of the goodwill and business of Dairyland, Inc. If they are fixtures necessary to the functioning of the dairy, the argument is ended: R. F. C. v. Dairyland, 19 Leh. L. J. 294. If personalty, can they be pledged validly as to assignees for creditors?

Assignees for the benefit of creditors, especially voluntary assignees, are merely representatives of the debtor, enjoying his rights only, and no others, bound where he would be bound; not the representatives of the creditors, and not clothed with their powers, but merely volunteers and not bona fide purchasers for value. They are but the hand of the assignor in the distribution of his estate among his creditors, have no title or real interest in the fund, and cannot appeal from a decree distributing it among creditors: Mellon's Appeal, 32 Pa. 121; In re Fulton's Estate, 51 Pa. 204.

This was the state of the law of Pennsylvania prior to the Act of June 4, 1901, P. L. 404, sec. 17, 39 PS §71 which provides:

"An assignee or receiver for the benefit of creditors . . . shall be the representative of the creditors of the insolvent, and entitled by proper legal steps, in his own name as assignee or receiver, to have vacated and set aside for the benefit of all the creditors any . . . payment, pledge, assignment, transfer, conveyance or encumbrance which heretofore could have been avoided by the creditors, or any of them, or by which it is attempted to give one creditor preference over another, or which, by this act, inures to the benefit of all the creditors of such insolvent."

In discussing this act and section, Mr. Justice Stewart in Strawn, Trustee, v. Iams (No. 1), 247 Pa. 132, 135, said:

"The extent to which the powers of an assignee are enlarged by this act is defined in the 17th section, to be referred to more specifically later on. These enlarged powers were conferred to the end that the purpose of the act might not fail because of lack of authority in the assignee to enforce its provisions. Manifestly it was no part of the purpose of the act, in case of voluntary assignment for the benefit of creditors, to bring within the assignment and thus subject it to the control of the assignee, other property than that as to which the assignor had the right of transfer and conveyance, except such property as, being insolvent, he had parted with in an attempt to give a fraudulent preference to some creditors to the prejudice of general creditors. So much is made apparent by the first three sections of the act. As to property falling within the exception, each of those sections provides that the preference made with respect to it shall enure to the benefit of the general creditors if the 'assignment for the benefit of creditors be made or proceedings in insolvency be commenced within four months after such judgment . . . pledge,

assignment, transfer, conveyance or encumbrance shall have been . . . made or recorded.' *Otherwise, that is to say, if the pledge or encumbrance which it is claimed was a preference, had continued for as much as four months prior to the assignment, the general creditors, for anything in this act contained, would take the property or thing pledged subject to the preference. The act enlarges the power of the assignee only with respect to such property as belongs to general creditors by virtue of its own provisions;* it makes him the representative of the creditors of the insolvent and entitled to have vacated, by proper legal steps, in his own name as assignee any conveyance or encumbrance, first, where the conveyance or encumbrance could have been avoided by the creditors; . . . With respect to the first, *we think the power there given is to be measured by the rights of the creditors in such cases before the passage of the act,* and that by 'proper legal steps' is to be understood those legal steps or that remedy which had theretofore been available to the creditor." (Italics supplied.)

There was no effort to show insolvency when the preference was made.

Could the creditors have avoided the conveyance, pledge or encumbrance by legal steps available to them prior to the passage of the act? They were all subsequent general creditors.

A mortgage or pledge of personal property, unaccompanied by possession, is valid as between mortgagor and mortgagee: Boyle v. Rankin, 22 Pa. 168; Klaus v. Majestic Apartment House Co., 250 Pa. 194; but it is void as to creditors: Clow et al. v. Woods, 5 S. & R. 275; except when the subject of the pledge is an intangible right, incapable of delivery or of manual occupancy, where it comes into existence after the pledge is made, and where the personal effort of the pledgee is necessary, both as to its subsequent existence and its mainte-

nance: Wallace's Appeal, 104 Pa. 559; Collins' Appeal, 107 Pa. 590.

Nothing seems better settled than that goodwill of a business, or business itself, is an intangible asset, incapable of delivery and requiring personal effort for existence and maintenance: White v. Trowbridge, 216 Pa. 11; 'In re Race Street, 24 Pa. C. C. 433; and cases already cited. They seem to flow as fully from pure personalty as from realty or fixtures therein involved.

Furthermore, an agreement by a debtor to give his creditor an equitable lien upon personal property retained in the possession of the debtor is good between them and will be enforced in equity: Smith v. Equitable Trust Co. (No. 2), 215 Pa. 418; Hurley v. Ashbridge, 55 Pa. Superior Ct. 523; Davis v. Billings, 254 Pa. 574; as against general creditors, and even though the personalty seems to be capable of delivery; although not as against purchasers for value: Davis v. Billings, supra; or execution creditors: Klaus v. Majestic Apartment House Co., supra. See also Buckley v. Duff & Sons, 114 Pa. 596, Christ v. Zehner, 212 Pa. 188, and Hemphill Co. v. Davis Knitting Co. et al., 114 Pa. Superior Ct. 94.

It will be observed that the assignees did nothing, indeed, by way of taking legal proceedings, but simply, as was their duty, collected the assets of Dairyland, Inc., with the approval of claimant.

The parties are in agreement that the milk routes sold are a part of the goodwill and business in connection with which patents and trade-marks were used. We feel that, whether necessary or not to the functioning of an industrial or manufacturing plant, they were pledged to the Reconstruction Finance Corporation, validly as against general creditors, and that general creditors had, prior to the Act of 1901, supra, no "proper legal means" to avoid the obligation. Accordingly, the rights of the assignees in this case rise no higher, and the exceptions must be dismissed.

Now, March 13, 1944, the exceptions to the report of the auditor are dismissed, and John H. J. Reinhard and Elliott E. Pollard, assignees for the benefit of creditors of Dairyland, Inc., are directed to prepare a schedule of distribution in accordance with this opinion. Costs shall be borne in equal proportions by Reconstruction Finance Corporation and the assigned estate.